# In the United States Court of Federal Claims

### Nos. 17-1959C, 18-179C, and 18-400C
### Filed: January 29, 2019
### Revised for Publication: February 15, 2019[1]

```
* * * * * * * * * * * * *  *
IAP WORLDWIDE SERVICES, INC.,  *
                               *
            Protestor,         *
                               *
v.                             *
                               *
UNITED STATES,                 *
                               *
            Defendant.         *
                               *
* * * * * * * * * * * * *  *
```

**Bid Protest; Motion to Alter or Amend Judgment; Motion for Relief from Judgment; Bid and Proposal Costs.**

**J. Alexander Ward**, Morrison & Foerster, LLP, Washington, D.C., for protestor. Of counsel were **Daniel E. Chudd**, **Ethan E. Marsh**, **James A. Tucker**, **Catherine L. Chapple**, and **R. Locke Bell**, Morrison & Foerster, LLP, Washington, D.C.

**Rebecca S. Kruser**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her were **Douglas K. Mickle**, Assistant Director, Commercial Litigation Branch, **Robert E. Kirschman**, **Jr.**, Director, Commercial Litigation Branch, and **Joseph H. Hunt**, Assistant Attorney General, Civil Division, Department of Justice. Of counsel were **Margaret P. Simmons** and **Steven Feldman**, United States Army Engineering and Support Center, Huntsville, AL.

# O R D E R

**HORN, J.**

At issue before the court is protestor IAP Worldwide Services, Inc.'s (IAP) motion to alter or amend the judgment, pursuant to Rule 59(e) (2018) of the Rules of the United States Court of Federal Claims (RCFC), in IAP's most recently filed protest, Case No. 18-400C, which is part of a series of related protests. In its RCFC 59(e) motion, IAP seeks

---

[1] This Order was issued under seal on January 29, 2019. The parties were given the opportunity to propose redactions to the January 29, 2019 Order to the court. No redactions were proposed. The Order, therefore, is unsealed and issued for publication.

to recover bid and proposal costs from two of IAP's prior protests, Case Nos. 17-1959C and 18-179C. Case Nos. 17-1959C, 18-179C, and 18-400C are all related to contract awards for the repair of the electrical system in Puerto Rico after Hurricane Maria. IAP's protest in Case No. 18-4C, regarding IAP's protest of a modification to a contract for the repair of the electrical system in Puerto Rico, is a protest which is not at issue in this Order. IAP also does not seek to alter or amend the court's decision on the underlying merits of Case No. 18-400C, nor does IAP seek bid and proposal costs stemming from Case No. 18-400C.[2] Filed at the same time as IAP's RCFC 59(e) motion, and also at issue before the court, are IAP's two, almost identical, motions for relief from judgment brought pursuant to RCFC 60(b)(5) (2018) and RCFC 60(b)(6), in both Case No. 17-1959C and Case No. 18-179C. IAP is seeking to recover bid and proposal costs from those two protests.  IAP filed its motions for relief in Case Nos. 17-1959C and 18-179C in the alternative to its RCFC 59(e) motion to alter or amend the judgment in Case No. 18-400C. The issues raised by IAP are fact based, complex and specific to the protests at issue in this series of related protests filed by IAP concerning multiple award opportunities for the same project.

## BACKGROUND

As noted above, the associated protest actions at issue were all related to contracts awarded by the United States Army Corps of Engineers (Army Corps) for repair to the Puerto Rican electrical system after Hurricane Maria made landfall on Puerto Rico in September 2017. In the aftermath of the storm and the tragic impacts of that storm on the citizens of Puerto Rico, on October 12, 2017, the Army Corps issued a Justification and Approval pursuant to Federal Acquisition Regulation 6.302-2 (2018), based on Unusual and Compelling Urgency, to expedite its procurement for the repair and reconstruction of the electrical system of Puerto Rico and to limit competition to holders of the Resilient Power and Mechanical System Basic Ordering Agreement (Resilient Power and Mechanical System BOA), a contract for the "sustainment, restoration and modernization of electrical and mechanical systems in critical infrastructure." The Resilient Power and Mechanical System BOA was initially competed under full and open competition in 2013 and resulted in various contractors being qualified holders of the Resilient Power and Mechanical System BOA. At the time that Hurricane Maria hit Puerto Rico, there were nine holders of the Resilient Power and Mechanical System BOA, including IAP. The Army Corps, therefore, had authority to issue orders to the nine current holders of the Resilient Power and Mechanical System BOA for the repair and restoration of the electrical power grid in Puerto Rico up to a total price ceiling of $1.336 billion.

The Army Corps issued a request for proposals for a time and material order under the Resilient Power and Mechanical System BOA (BOA Order # 1) on October 8, 2017, for the repair and replacement of electrical transmission and distribution lines in Puerto

---

[2] In Case No. 18-400C, IAP's protest of the Army Corps' evaluation of IAP's final, revised proposal, the court ruled against IAP on the merits of that protest on April 9, 2018. Thus, as discussed below, IAP is not entitled to recovery of bid and proposal costs stemming from that case.

Rico. Both IAP and Fluor Enterprises Inc. (Fluor), two of the nine Resilient Power and Mechanical System BOA holders, submitted timely proposals. On October 16, 2017, the Army Corps awarded BOA Order # 1 to Fluor initially in the amount of $240.0 million. IAP did not challenge the award of BOA Order # 1 to Fluor.

On November 7, 2017, the Army Corps solicited proposals for a second time and material order under the Resilient Power and Mechanical System BOA (BOA Order # 2), again for the repair and restoration of services to the electrical grid in Puerto Rico. BOA Order # 2 had a price ranging from $1.096 million to $831.0 million. Proposals were due on November 14, 2017. IAP and Fluor were the only two offerors to submit timely proposals. On December 1, 2017, the Army Corps awarded BOA Order # 2 to Fluor, with a maximum price ceiling amount not to exceed $831.0 million.

On December 5, 2017, the Army Corps modified BOA Order # 1 to add $261.0 million in funds to the already $240.0 million allocated to BOA Order # 1, bringing the total BOA Order # 1 value to $501.0 million. IAP filed a protest at the Government Accountability Office (GAO) on December 14, 2017, related to the Army Corps' modification of BOA Order # 1, alleging that the modification was out-of-scope.

On December 15, 2017, IAP filed its first protest before this court, Case No. 17-1959C, unrelated to IAP's December 14, 2017 GAO protest of the modification of BOA Order # 1, but which challenged the Army Corps' handling of the BOA Order # 2 procurement. IAP protested the Army Corps' decision to hold discussions solely with Fluor on BOA Order # 2, the Army Corps' failure to notify IAP of its exclusion from the competitive range until the day after the lapse of IAP's right to file for an automatic stay at the GAO, therefore, not allowing IAP to have protested the December 1, 2017 award of BOA Order # 2 to Fluor at the GAO, the Army Corps' allegedly arbitrary and capricious assignment of numerous deficiencies and weaknesses to IAP's proposal on BOA Order # 2, and the Army Corps' allegedly unequal treatment of IAP. IAP requested that this court direct the Army Corps to cancel the award of BOA Order # 2 to Fluor and make an award to IAP or "in the alternative, cancel the award, open discussions with IAP, and reevaluate proposals reasonably and in accordance with the terms of the Solicitation." IAP also filed a motion for a temporary restraining order and preliminary injunction in Case No. 17-1959C on December 15, 2017, which, after a hearing, the court denied on December 18, 2017.

On December 27, 2017, the Army Corps overrode the Competition in Contracting Act (CICA) stay following IAP's December 14, 2017 protest of the modification of BOA Order # 1 at the GAO. IAP's GAO protest of the modification of BOA Order # 1 was withdrawn on January 2, 2018, allowing IAP to bring a protest of the modification of BOA Order # 1 before this court. See IAP Worldwide Servs., Inc., B-415791.1 (Comp. Gen. Jan. 2, 2018). On that same date, January 2, 2018, IAP filed its second protest in this court, Case No. 18-4C, alleging that the Army Corps' modification to BOA Order # 1 was out-of-scope. On January 4, 2018, IAP filed a motion for a temporary restraining order and preliminary injunction in Case No. 18-4C regarding the modification to BOA Order # 1.

On January 8, 2018, the court held a hearing regarding the protest of the BOA Order # 1 modification in Case No. 18-4C, and the previously filed protest regarding BOA Order # 2 in Case No. 17-1959C. At the January 8, 2018 hearing, the court discussed the issues IAP had raised in the protest regarding BOA Order # 2 in Case No. 17-1959C and noted potential problems with the agency's procurement for BOA Order # 2. At the January 8, 2018 hearing, defendant indicated it was planning to take corrective action by reevaluating IAP's initial proposal for BOA Order # 2. Counsel for the defendant explained at the January 8, 2018 hearing that if IAP submits a "successful proposal," after renewed discussions, then IAP would be given an award under BOA Order # 2. Defendant's counsel also explained at the January 8, 2018 hearing that the Army Corps would issue a stay of the modification of BOA Order # 1 and reallocate remaining, unused funds available under BOA Order # 1 as a potential award for IAP under BOA Order # 2. IAP's counsel stated at the January 8, 2018 hearing that although "[t]here's a little bit of the devil on the details," defendant's proposed corrective action "does sit with me." IAP's counsel also indicated at the January 8, 2018 hearing that IAP would hold "in abeyance" its protest to BOA Order # 1 in Case No. 18-4C, regarding the BOA Order # 1 modification, and its protest of the Army Corps' evaluation of its proposal for BOA Order # 2 in Case No. 17-1959C in light of the government's proposed corrective action. Several months later, on March 19, 2018, IAP voluntarily dismissed its protest to the modification of BOA Order # 1 in Case No. 18-4C prior to the court issuing a decision on the merits of the protest in Case No. 18-4C, given the protestor's decision to hold "in abeyance" its protest under BOA Order # 1.

On January 9, 2018, briefing on the previously set schedule for the parties' cross-motions for judgment on the administrative record in the protest of BOA Order # 2 in Case No. 17-1959C concluded. Given the urgency of the procurement, and, in order to keep the protest moving forward, on January 11, 2018, the court held oral argument on the parties' cross-motions for judgment on the administrative record in the protest regarding BOA Order # 2 in Case No. 17-1959C. The court noted that it had identified "some concerns" and had "some questions" regarding the procurement for BOA Order # 2 and "want[ed] to have further discussion" on the parties' cross-motions for judgment on the administrative record. Following the court's remarks, counsel for defendant apprised the court that defendant, in fact, had begun corrective action regarding the protest at issue in Case No. 17-1959C by reevaluating IAP's initial proposal for BOA Order # 2. IAP's counsel notified the court that he was aware that defendant had reevaluated IAP's initial proposal for BOA Order # 2 and that the agency had sent a draft amendment to the solicitation for BOA Order # 2 to IAP earlier that day. IAP's counsel also notified the court that IAP was awaiting receipt of the final version of the amendment to the solicitation for BOA Order # 2.

Defendant's counsel further explained to the court at the January 11, 2018 oral argument that the corrective action plan she had described to the court at the January 8, 2018 hearing had been "altered somewhat," but that IAP's counsel was "on board with" the changes, a statement to which IAP's counsel did not object. Defendant's counsel explained that instead of issuing a stay of the modification to BOA Order # 1, as previously

described at the January 8, 2018 hearing, the Army Corps was going to issue a partial stop work order on BOA Order # 2, in the amount of $250.0 million, and that the Army Corps would set apart the $250.0 million as a potential award for IAP, following further submissions and an evaluation of a revised proposal to be submitted by IAP. As part of defendant's proposed corrective action, IAP would be given the opportunity to submit a proposal for the $250.0 million and IAP would be awarded a contract if the Army Corps found IAP's revised proposal to be "acceptable." IAP's counsel at the January 11, 2018 oral argument noted that, although he was not prepared to dismiss Case No. 17-1959C following the oral argument, in regard to defendant's corrective action, "[w]e absolutely agree and appreciate what they [the agency] have put forth so far."

In carrying out its corrective action, the Army Corps did not issue a new solicitation for the possible award under BOA Order # 2 for $250.0 million, rather the defendant competed a possible award under the original solicitation for BOA Order # 2, on which IAP previously had submitted an offer. The Army Corps issued several amendments to the BOA Order # 2 solicitation, including Amendment 0003A on January 12, 2018, which reduced the price ceiling for a possible award under BOA Order # 2, following an evaluation and acceptable proposal from IAP, from $831.0 million to $250.0 million. Notably, for IAP's related protests in Case Nos. 17-1959C, 18-179C and 18-400C, the solicitation at issue remained the original solicitation for BOA Order # 2, albeit with amendments issued by the agency relevant to the changing circumstances. The Army Corps never issued a new solicitation for the various iterations of the competition for BOA Order # 2 at issue in IAP's related protests in Case Nos. 17-1959C, 18-179C, and 18-400C.

On January 12, 2018, the Army Corps conducted discussions with IAP regarding a possible award under BOA Order # 2. On January 18, 2018, IAP submitted a revised proposal, and on January 31, 2018, the Army Corps completed its evaluation of IAP's revised proposal for a portion of BOA Order # 2. Because Fluor's contract under BOA Order # 1 and BOA Order # 2 were not at issue during the Army Corps' evaluation of IAP's revised proposal, the Army Corps held discussions only with IAP and evaluated IAP's revised proposal for a portion of BOA Order # 2 based on its own merits in order to determine if the revised IAP proposal was technically "acceptable" and contained a "reasonable price" for a possible award of up to $250.0 million. On January 31, 2018, the Army Corps determined that IAP's revised proposal was not "acceptable" and that it would not make an award to IAP.

On February 5, 2018, IAP filed its third related bid protest in this court, Case No. 18-179C, protesting the Army Corps' evaluation of IAP's revised proposal for a portion of BOA Order # 2. IAP alleged that the evaluation by the Army Corps was unreasonable, as well as unequal, as compared with the Army Corps' earlier evaluation of Fluor's proposal for BOA Order # 2. IAP requested that the court order an award of the contract to IAP, or, in the alternative, that the Army Corps again "reevaluate proposals reasonably and in accordance with the terms of the Solicitation." After consideration of the parties' filings and a hearing with the parties, on February 15, 2018, this court issued a ruling in which it determined that the Army Corps' evaluation of IAP's revised proposal had been arbitrary

and capricious. The court noted that it could not direct the Army Corps to award a contract to IAP, but, instead, found that the Army Corps' evaluation had been improper and allowed discussions between the Army Corps and IAP again to be reopened, as well as another evaluation of an updated revised proposal to be submitted by IAP.

On February 16, 2018, the Army Corps reopened discussions regarding issues with IAP's revised, technical proposal and two pricing deficiencies in IAP's revised, price proposal for BOA Order # 2. On February 22, 2018, IAP submitted a newly, revised, technical proposal, and on February 26, 2018, IAP submitted a further, newly, revised, price proposal. Together, the most recent, newly, revised, technical proposal and the most recent, newly, revised, price proposal comprised IAP's final, revised proposal. On March 8, 2018, the Army Corps determined that IAP's final, revised proposal was still not "acceptable" and un-awardable due to technical and pricing issues remaining in IAP's final, revised proposal.

On March 15, 2018, IAP filed its fourth bid protest, Case No. 18-400C, alleging that the Army Corps had unreasonably evaluated its final, revised proposal. In its previous complaints in Case Nos. 17-1959C, 18-4C, and 18-179C, IAP had not requested bid and proposal costs, but only had included a general catchall request for "such other and further relief as may be just and proper." In the most recent of the complaints, Case No. 18-400C, however, protestor specifically requested that the court award IAP "damages in the form of bid and proposal costs for all phases of its proposals for Orders 1 [BOA Order # 1] and 2 [BOA Order # 2]."

On March 19, 2018, IAP filed motions to voluntarily dismiss, without prejudice, Case Nos. 17-1959C, 18-4C, and 18-179C, without specifically seeking recovery of bid and proposal costs. Also, on March 19, 2018, the court issued an Order dismissing Case Nos. 17-1959C, 18-4C, and 18-179C, without prejudice, and the Clerk of the Court of the United States Court of Federal Claims entered judgment in Case Nos. 17-1959C, 18-4C, and 18-179C, without an award of bid and proposal costs. At that time, the only protest remaining before the court was IAP's Case No. 18-400C, which challenged the Army Corps' evaluation of IAP's final, revised proposal.

On April 9, 2018, the court issued a ruling in Case No. 18-400C, finding that the Army Corps had not unreasonably evaluated IAP's final, revised proposal for BOA Order # 2. The court granted defendant's cross-motion for judgment on the administrative record and denied IAP's motion for judgment on the administrative record. On April 27, 2018, the court issued an Order that Case No. 18-400C be dismissed in accordance with its April 9, 2018 ruling. The same day, April 27, 2018, the Clerk of the Court of the United States Court of Federal Claims entered judgment in favor of defendant and dismissed Case No. 18-400C.

Subsequently, IAP timely moved the court to alter or amend the judgment in Case No. 18-400C, pursuant to RCFC 59(e), "and order that Defendant United States pay IAP's bid and proposal costs for its initial proposal," which was at issue in Case No. 17-1959C, and its "first proposal revision," which was at issue in Case No. 18-179C. In the alternative

to its RCFC 59(e) motion in Case No. 18-400C, IAP moved, pursuant to RCFC 60(b)(5) and RCFC 60(b)(6), for relief from the judgment entered in Case No. 17-1959C, IAP's protest of the Army Corps' evaluation of its initial proposal for BOA Order # 2, and relief from the judgment entered in Case No. 18-179C, IAP's protest of the Army Corps' evaluation of its revised proposal for BOA Order # 2.[3] In its RCFC 59(e) motion, IAP does not take issue with the court's April 9, 2018 ruling that the Army Corps had not unreasonably evaluated IAP's final, revised proposal for BOA Order # 2 in Case No. 18-400C, nor does IAP seek its bid and proposal costs arising from Case No. 18-400C. Rather, IAP argues that the April 27, 2018 dismissal of Case No. 18-400C, which did not include an award to IAP of its bid and proposal costs for its prior two protests at issue in Case Nos. 17-1959C and 18-179C "is a clear error" of law that "potentially works a manifest injustice on IAP."

Defendant's response to IAP's RCFC 59(e) motion argues that IAP has failed to describe any extraordinary circumstances that would justify amending the judgment in Case No. 18-400C to allow for an award of bid and proposal costs. Defendant also argues that even if judgment was to be amended, IAP is not entitled to recover bid and proposal costs stemming from Case Nos. 17-1959C and 18-179C. IAP filed a reply in support of its RCFC 59(e) motion, and reasserts that the court should amend the judgment in Case No. 18-400C in order to grant "IAP bid and proposal costs relating to cases 17-1959 and 18-179" to prevent a "manifest injustice" of "leaving IAP without an adequate remedy based upon an error that can be easily rectified."

In both of IAP's almost identical, two and half page RCFC 60(b)(5) and RCFC 60(b)(6) alternative motions for relief from the judgments entered in Case Nos. 17-1959C and 18-179C, IAP summarily, and with little discussion of applicable law, argues that it will be "deprived of any meaningful remedy" for the Army Corps' evaluation of its proposals unless the court re-opens the judgments in Case Nos. 17-1959C and 18-179C and awards IAP its bid and proposal costs for those protests. IAP does not distinguish in its RCFC 60(b)(5) and RCFC 60(b)(6) motions as to when IAP is relying on RCFC 60(b)(5) or RCFC 60(b)(6) as the ground for relief. IAP, instead, generally cites to both RCFC 60(b)(5) and RCFC 60(b)(6) when arguing for relief from the judgments in Case Nos. 17-1959C and 18-179C.

Defendant filed a "combined opposition" to IAP's RCFC 60(b)(5) and RCFC 60(b)(6) motions in Case Nos. 17-1959C and 18-179C which argues that the motions "impermissibly rely upon Rule 60(b)(6) because IAP has not shown any extraordinary circumstances and at bottom is at fault for its current predicament." Defendant also argues that IAP impermissibly relies on RCFC 60(b)(5) as support for its motions for relief from judgment because:

---

[3] As noted above, IAP did not file a post-judgment motion relating to Case No. 18-4C, IAP's protest of the alleged out-of-scope modification of BOA Order # 1.

IAP presents no significant change in the law or factual conditions since March 19, 2018 that would render the judgment detrimental to the public interest. Although IAP now contests its own decision to voluntarily dismiss cases 17-1959 and 18-179, it has not come close to meeting its burden to show any changed circumstances that warrant relief under this section of Rule 60(b).

Defendant also argues that, "IAP's motions fail because IAP has waived any concerns it has about the Government's corrective action by not protesting it at the time these actions were taken." Defendant finally argues that "IAP is not entitled to the bid and proposal costs that it seeks – the Court did not rule in IAP's favor in case 17-1959 and any bid and proposal costs incurred by IAP were not wasted due to the Army Corps' corrective action and reevaluation."

IAP filed a "combined" reply in support of its RCFC 60(b)(5) and RCFC 60(b)(6) motions in Case Nos. 17-1959C and 18-179C, in which IAP tries to distinguish its arguments in favor of relief pursuant to RCFC 60(b)(5) and its arguments in support of relief pursuant to RCFC 60(b)(6). IAP states that it is entitled to relief, pursuant to RCFC 60(b)(5), because applying the judgments in Case Nos. 17-1959C and 18-179C will "result in inequity" because IAP would be deprived of "any meaningful remedy" for the Army Corps' allegedly unreasonable evaluation of IAP's initial proposal in Case No. 17-1959C, and for the Army Corps' unreasonable evaluation of its revised proposal in Case No. 18-179C. IAP also argues that it is entitled to relief, pursuant to RCFC 60(b)(6), "[i]n light of the extraordinary situation" in Puerto Rico and because it is "not at fault" for failing to protest the government's "less-than-complete corrective action" taken in Case No. 17-1959C. Subsequently, the court held oral argument on IAP's RCFC 59(e) motion in Case No. 18-400C and on IAP's RCFC 60(b)(5) and RCFC 60(b)(6) motions in Case Nos. 17-1959C and 18-179C.

## DISCUSSION

### I.   IAP's RCFC 59(e) motion to alter or amend the judgment in Case No. 18-400C.

As indicated above, pursuant to RCFC 59(e), IAP has timely moved to alter or amend the judgment in Case No. 18-400C, a protest in which IAP did not prevail and for which protestor is not seeking to recover bid and proposal costs. Instead, IAP seeks to alter or amend the judgment in Case No. 18-400C in order to recover its bid and proposal costs for two of its earlier protests in Case Nos. 17-1959C and 18-179C, in which the RCFC 59(e) motion is being made well after the 28 days in which a timely request to alter or amend a judgment must be made. See RCFC 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."). The first protest for which IAP seeks to recover bid and proposal costs is Case No. 17-1959C, in which the court had indicated at an initial hearing on January 8, 2018 in Case Nos. 17-1959C and 18-4C, and at a January 11, 2018 oral argument in Case No. 17-1959C, that there appeared to be some problems with the Army Corps' evaluation of offers for BOA Order # 2, following which the agency took corrective action. The second protest for which

IAP seeks to recover bid and proposal costs is Case No. 18-179C, the protest in which IAP protested defendant's evaluation of IAP's revised proposal for BOA Order # 2, and in which the court found in favor of IAP on the merits and directed the Army Corps to engage in another round of discussions with IAP for a possible award for a portion of BOA Order # 2.

Reconsideration of a judgment is not intended to permit a party to retry its case when it previously was afforded a full and fair opportunity to do so. The United States Court of Appeals for the Federal Circuit has stated that it "reviews the trial court's decision on reconsideration for an abuse of discretion." Entergy Nuclear FitzPatrick, LLC v. United States, 711 F.3d 1382, 1386 (Fed. Cir. 2013) (citing Yuba Nat. Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir.) (noting that "[t]he decision whether to grant reconsideration lies largely within the discretion of the [trial] court"), reh'g denied (Fed. Cir. 1990)); see also Carter v. United States, 207 Ct. Cl. 316, 318, 518 F.2d 1199, 1199 (1975), cert. denied, 423 U.S. 1076, reh'g denied, 424 U.S. 950 (1976); CanPro Invs. Ltd. v. United States, 131 Fed. Cl. 528, 531 (2017); Osage Tribe of Indians of Okla. v. United States, 97 Fed. Cl. 345, 348 (2011) (discussing RCFC 59(a) and RCFC 60(b)); Oenga v. United States, 97 Fed. Cl. 80, 83 (2011) (discussing RCFC 59(a)); Webster v. United States, 92 Fed. Cl. 321, 324, recons. denied, 93 Fed. Cl. 676 (2010) (discussing RCFC 60(b)); Alpha I, L.P. ex rel. Sands v. United States, 86 Fed. Cl. 126, 129 (2009) (discussing RCFC 54(b) and 59(a)); Banks v. United States, 84 Fed. Cl. 288, 291-92 (2008) (discussing RCFC 54(b) and 59(a)); Corrigan v. United States, 70 Fed. Cl. 665, 667-68 (2006) (discussing RCFC 59(a)); Tritek Techs., Inc. v. United States, 63 Fed. Cl. 740, 752 (2005); Keeton Corr., Inc. v. United States, 60 Fed. Cl. 251, 253 (2004) (discussing RCFC 59(a)); Paalan v. United States, 58 Fed. Cl. 99, 105 (2003), aff'd, 120 F. App'x 817 (Fed. Cir.), cert. denied, 546 U.S. 844 (2005); Citizens Fed. Bank, FSB v. United States, 53 Fed. Cl. 793, 794 (2002) (discussing RCFC 59(a)).

"Motions for reconsideration must be supported 'by a showing of extraordinary circumstances which justify relief.'" Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (quoting Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999)) (discussing RCFC 59(a)), reh'g en banc denied (Fed. Cir.), cert. denied, 546 U.S. 826 (2005); see also Fiskars, Inc. v. Hunt Mfg. Co., 279 F.3d 1378, 1382 (Fed. Cir. 2002) ("Rule 60(b)(6) is available only in extraordinary circumstances and only when the basis for relief does not fall within any of the other subsections of Rule 60(b)." (citing Marquip, Inc. v. Fosber Am., Inc., 198 F.3d 1363, 1370 (Fed. Cir. 1999), reh'g denied (Fed. Cir. 2000); Provident Sav. Bank v. Popovich, 71 F.3d 696, 700 (7th Cir. 1995))); Oenga v. United States, 97 Fed. Cl. at 83; Seldovia Native Ass'n Inc. v. United States, 36 Fed. Cl. 593, 594 (1996) (discussing RCFC 59(a)), aff'd, 144 F.3d 769 (Fed. Cir. 1998). Generally, "[t]he cases seem to make [a] fault/no fault distinction the controlling factor in determining whether extraordinary circumstances will be found or not. In a vast majority of cases finding that extraordinary circumstances do exist so as to justify relief, the movant is completely without fault . . . ."  12 Joseph T. McLaughlin and Thomas D. Rowe, Jr., Moore's Federal Practice § 60.48[3][b] (3rd ed. 2008) (discussing RCFC 60(b)(6)); see also Amado v. Microsoft Corp., 517 F.3d 1353, 1363 (2008) (citing Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 393 (1993)) (discussing RCFC

60(b)(6)).

Courts must address reconsideration motions with "exceptional care." <u>Carter v. United States</u>, 207 Ct. Cl. at 318, 518 F.2d at 1199; <u>see also</u> <u>Global Comput. Enters. v. United States</u>, 88 Fed. Cl. 466, 468 (2009) (discussing RCFC 59(a)). "The three primary grounds that justify reconsideration are: '(1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice.'" <u>Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC</u>, 597 F.3d 1374, 1383 (Fed. Cir. 2010); <u>see also</u> <u>Griffin v. United States</u>, 96 Fed. Cl. 1, 7 (2010) (discussing RCFC 59(a)), <u>mot. to amend</u> <u>denied</u>, <u>appeal dismissed</u>, 454 F. App'x 899 (Fed. Cir. 2011); <u>Totolo/King Joint Venture v. United States</u>, 89 Fed. Cl. 442, 444 (2009) (quoting <u>Stockton E. Water Dist. v. United States</u>, 76 Fed. Cl. 497, 499 (2007), <u>aff'd in part</u>, <u>vacated in part</u>, <u>rev'd in part on other grounds</u>, 583 F.3d 1344 (Fed. Cir. 2009)) (discussing RCFC 59(a)), <u>appeal dismissed</u>, 431 F. App'x 895 (Fed. Cir.), <u>reh'g denied</u> (2011); <u>Dairyland Power Coop. v. United States</u>, 90 Fed. Cl. 615, 652 (2009) (discussing RCFC 59(a)), <u>recons. denied</u>, No. 04-106C, 2010 WL 637793 (Fed. Cl. Feb. 22, 2010), <u>aff'd in part</u>, <u>vacated in part on other grounds</u>, 645 F.3d 1363 (Fed. Cir. 2011); <u>Matthews v. United States</u>, 73 Fed. Cl. 524, 526 (2006) (citations omitted) (discussing RCFC 59; <u>Prati v. United States</u>, 82 Fed. Cl. 373, 376 (2008) (discussing RCFC 59(a)), <u>aff'd</u>, 603 F.3d 1301 (Fed. Cir.), <u>reh'g en banc denied</u> (2010), <u>cert. denied</u>, 562 U.S. 1139 (2011). "Manifest," as in "manifest injustice," is "understood as clearly apparent or obvious." <u>Cyios Corp. v. United States</u>, 124 Fed. Cl. 107, 113 (2015) (internal quotation marks omitted); <u>see also</u> <u>Lee v. United States</u>, 130 Fed. Cl. 243, 252 (2017), <u>aff'd</u>, 895 F.3d 1363 (Fed. Cir. 2018); <u>Ammex, Inc. v. United States</u>, 52 Fed. Cl. 555, 557 (2002) (discussing RCFC 59), <u>aff'd</u>, 384 F.3d 1368 (Fed. Cir. 2004), <u>cert. denied</u>, 544 U.S. 948 (2005). "Where a party seeks reconsideration on the ground of manifest injustice, it cannot prevail unless it demonstrates that any injustice is 'apparent to the point of being almost indisputable.'" <u>Griffin v. United States</u>, 96 Fed. Cl. at 7 (quoting <u>Pac. Gas & Elec. Co. v. United States</u>, 74 Fed. Cl. 779, 785 (2006), <u>aff'd in part</u>, <u>rev'd in part on other grounds</u>, 536 F.3d 1282 (Fed. Cir. 2008)). "A court, therefore, will <u>not</u> grant a motion for reconsideration if the movant 'merely reasserts . . . arguments previously made . . . all of which were carefully considered by the court.'" <u>Ammex, Inc. v. United States</u>, 52 Fed. Cl. at 557 (emphasis in original) (quoting <u>Principal Mut. Life Ins. Co. v. United States</u>, 29 Fed. Cl. 157, 164 (1993), <u>aff'd</u>, 50 F.3d 1021 (Fed. Cir.), <u>reh'g denied</u>, <u>en banc suggestion declined</u> (Fed. Cir. 1995)); <u>see also</u> <u>CanPro Invs. Ltd. v. United States</u>, 131 Fed. Cl. at 531; <u>Griffin v. United States</u>, 96 Fed. Cl. at 7; <u>Bowling v. United States</u>, 93 Fed. Cl. 551, 562 (discussing RCFC 59(a) and 60(b)), <u>recons. denied</u> (2010); <u>Webster v. United States</u>, 92 Fed. Cl. at 324 (discussing RCFC 59(a) and 60(b)); <u>Pinckney v. United States</u>, 90 Fed. Cl. 550, 555 (2009); <u>Tritek Techs., Inc. v. United States</u>, 63 Fed. Cl. at 752. "A motion for reconsideration is not intended  .  . . to give an unhappy litigant an additional chance to sway the court." <u>Stueve Bros. Farms, LLC v. United States</u>, 107 Fed. Cl. 469, 475 (2012) (internal quotations omitted; ellipse in original). "It is not sufficient for plaintiffs to reassert the same arguments they made in earlier proceedings, nor can plaintiffs raise new arguments that could have been made earlier." <u>Lee v. United States</u>, 130 Fed. Cl. at 252; <u>see also</u> <u>Cyios Corp. v. United States</u>, 124 Fed. Cl. at 113 (rejecting protestor's argument raised for the first time in its motion for reconsideration); <u>CANVS Corp. v. United States</u>,

116 Fed. Cl. 294, 300 (2014) ("[A] party may not raise an issue for the first time on reconsideration when the issue was available to be litigated at the time the complaint was filed." (internal quotation marks and citation omitted)).

In sum, it is logical and well established that, "a motion for reconsideration 'should not be based on evidence that was readily available at the time the motion was heard.'" Johnson v. United States, 127 Fed. Cl. 661, 664 (2016) (quoting Seldovia Native Ass'n Inc. v. United States, 36 Fed. Cl. at 594). "'Post-opinion motions to reconsider are not favored . . . especially where a party has had a fair opportunity to litigate the point in issue.'" Wagstaff v. United States, 118 Fed. Cl. 172, 175 (quoting Aerolease Long Beach v. United States, 31 Fed. Cl. 342, 376, aff'd, 39 F.3d 1198 (Fed. Cir. 1994)), aff'd, 595 F. App'x 975 (Fed. Cir. 2014).

RCFC 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." RCFC 59(e).[4] "A motion to alter or amend judgment under RCFC 59(e) 'seeks a revision which disturbs or revises legal rights and obligations that were settled by the previous judgment.'" Global Comput. Enters., Inc. v. United States, 88 Fed. Cl. at 468 (quoting Maxus Energy Corp. v. United States, 31 F.3d 1135, 1139 (Fed. Cir. 1994)). As indicated in Dairyland Power Cooperative v. United States, 106 Fed. Cl. 102 (2012) regarding a motion under RCFC 59(e):

> Under RCFC 59(e), the Court may alter or amend a judgment. Although the standard for reconsideration of a judgment has been described as somewhat more rigorous than that for reconsideration of an interlocutory order, see Wolfchild v. United States, 68 Fed. Cl. 779, 784 (2005), the decision whether to grant reconsideration lies largely within the discretion of the trial court. Yuba Natural Resources, Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990).

> Reconsideration is not to be construed as an opportunity to relitigate issues already decided. Shell Petroleum, Inc. v. United States, 47 Fed. Cl. 812, 814 (2000). Rather, the moving party must demonstrate either an intervening change in controlling law, previously unavailable evidence, or a manifest error of law or mistake of fact. Entergy Nuclear FitzPatrick, LLC v.

---

[4] As the United States Court of Appeals for the Federal Circuit noted in Progressive Industries, Inc. v United States, "RCFC 59(e) is identical to Rule 59(e) of the Federal Rules of Civil Procedure ('FRCP'). As we have stated before, '[t]he precedent interpreting the Federal Rules of Civil Procedure applies with equal force to the comparable Rules of the Court of Federal Claims.'" Progressive Indus., Inc. v. United States, 888 F.3d 1248, 1253 n.4 (Fed. Cir. 2018) (alteration in original) (quoting Kraft, Inc. v. United States, 85 F.3d 602, 605 n.6 (Fed. Cir.), opinion modified on other grounds on denial of reh'g, 96 F.3d 1428 (Fed. Cir. 1996)); see also Fla. Power & Light Co. v. United States, 66 Fed. Cl. 93, 96 (2005) ("In applying RCFC 59, judges of this Court regularly cite to cases applying FRCP 59.").

<u>United States</u>, 101 Fed. Cl. 464, 468 (2011) [<u>reh'g</u> <u>en</u> <u>banc</u> <u>denied</u>, 470 F. App'x 898 (Fed. Cir. 2012), <u>aff'd</u>, 711 F.3d 1382 (Fed. Cir. 2013)].

<u>Dairyland Power Coop. v. United States</u>, 106 Fed. Cl. at 104; <u>see</u> <u>also</u> <u>Salem Fin., Inc. v. United States</u>, 119 Fed. Cl. 84, 86 (2014). The court in <u>Salem Financial, Inc.</u> considered a RCFC 59(e) motion and noted that:

> Granting reconsideration or amendment under Rule 59 "requires 'a showing of extraordinary circumstances.'" <u>Shapiro v. Sec'y of Health and Human Servs.,</u> 105 Fed. Cl. 353, 361 (2012) (collecting cases). A motion for reconsideration is not intended to give an "unhappy litigant an additional chance to sway" the court. <u>Matthews v. United States</u>, 73 Fed. Cl. [at 526]. Nor may a party prevail on a motion for reconsideration by raising an issue for the first time on reconsideration when the issue was available to be litigated at the time the complaint was filed. <u>Id.</u>

<u>Salem Fin., Inc. v. United States</u>, 119 Fed. Cl. at 86 (denying the RCFC 59(e) motion to amend); <u>see</u> <u>also</u> <u>Johnson v. United States</u>, 127 Fed. Cl. at 663 ("In order to prevail, the moving party must, in addition to filing his motion 'no later than 28 days after the entry of judgment,' RCFC 59(e), make an evidentiary showing of extraordinary circumstances." (citing <u>Crews v. United States</u>, 424 F. App'x 937, 940 (Fed. Cir. 2011))). "Extraordinary circumstances for purposes of Rule 59(e) include: '(1) an intervening change in the controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice.'" <u>Progressive Indus., Inc. v. United States</u>, 131 Fed. Cl. 66, 69 (2017) (quoting <u>Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC</u>, 597 F.3d at 1383 (applying Eleventh Circuit law regarding Federal Rule of Civil Procedure 59(e) (Fed. R. Civ. P.))), <u>aff'd</u>, 888 F.3d 1248 (Fed. Cir. 2018); <u>see</u> <u>also</u> <u>Johnson v. United States</u>, 127 Fed. Cl. at 663; <u>Wolfchild v. United States</u>, 101 Fed. Cl. 92, 95 (2011) ("For reconsideration of a final judgment under RCFC 59(e), the movant must make 'a showing of extraordinary circumstances to justify relief.'" (quoting <u>Crews v. United States</u>, 424 F. App'x at 940)). "[M]anifest injustice," within the context of a motion under RCFC 59 refers to injustice that is "'apparent to the point of being almost indisputable.'" <u>Lee v. United States</u>, 130 Fed. Cl. at 252 (quoting <u>Pac. Gas & Elec. Co. v. United States</u>, 74 Fed. Cl. at 785). To prevail on a RCFC 59(e) motion, "[i]t is not sufficient for plaintiffs to reassert the same arguments they made in earlier proceedings, nor can plaintiffs raise new arguments that could have been made earlier." <u>Lee v. United States</u>, 130 Fed. Cl. at 252 (denying plaintiff's motion under RCFC 59(e)); <u>see</u> <u>also</u> <u>Strategic Hous. Fin. Corp. of Travis Cnty. v. United States</u>, 87 Fed. Cl. 183, 186 (2009) (noting that when deciding a motion under RCFC 59(e), "a motion for reconsideration 'should not be based on evidence that was readily available at the time the motion was heard'" (quoting <u>Seldovia Native Assn' v. United States</u>, 36 Fed. Cl. at 594).

As indicated above, IAP filed a timely RCFC 59(e) motion in Case No. 18-400C. IAP first argues that altering or amending the judgment in Case No. 18-400C "is necessary to prevent the manifest injustice of IAP being left without a remedy under the extraordinary circumstances of these interrelated cases." IAP alleges that:

[T]he manifest injustice is that Defendant, over and over, arbitrarily and capriciously deprived IAP of the opportunity to compete fairly for work it could have performed. IAP expended its resources in preparing proposals for two different contracts, and then turned around and expended more resources in proposal revisions each time the Agency was shown to have run a patently unfair procurement.

Defendant, however, argues that the agency "did not take any action that denied IAP the 'chance at award of a contract,'" but that IAP actually "had a chance at award of a contract" when, following the court's ruling in Case No. 18-179C, the Army Corps opened discussions once again with IAP and evaluated IAP's newly submitted and revised February 22, 2018 technical proposal and newly submitted and revised February 26, 2018 price proposal. According to defendant, IAP "squandered that chance because of the flaws in its technical and price proposals," which resulted in the agency's finding that IAP's final, revised and submitted technical and price proposals were not "acceptable" nor awardable, a decision which the court found reasonable in Case No. 18-400C, and which IAP has not protested.

Although, as the court found in Case No. 18-179C, the Army Corps improperly evaluated IAP's revised proposal for BOA Order # 2, after the court issued its ruling in Case No. 18-179C, the Army Corps allowed IAP to revise and submit a final, revised proposal for a portion of BOA Order # 2 several times, and provided IAP with, what, after review of its final, revised proposal, the court concluded was a fair and reasonable evaluation of IAP's final, revised proposal for BOA Order # 2, as found in Case No. 18-400C. Because of the urgency of the situation in Puerto Rico, the course of the procurement for BOA Order # 2 may have been less than a model procurement. As the procurement for BOA Order # 2 progressed, however, the Army Corps afforded IAP multiple opportunities for discussions and to revise its proposal and have the revised proposals evaluated. In the end, IAP received a fair evaluation of its proposal to compete for a portion of BOA Order # 2. Ultimately, the court found that IAP's final, revised proposal was not "acceptable" and that IAP should not be awarded a portion of the available funds under BOA Order # 2 due to technical and pricing issues that the Army Corps, not arbitrarily and not capriciously, had determined remained even in IAP's final, revised proposal, despite the various opportunities IAP had to revise its proposal and the multiple discussions IAP had with the Army Corps. Not only has IAP not challenged the court's decision that the Army Corps had not unreasonably evaluated IAP's final, revised proposal for BOA Order # 2 in Case No. 18-400C, but the court also has not been presented with a change to controlling law, previously unavailable evidence, or a manifest error of law or mistake of fact, with respect to the court's decision regarding the Army Corps' evaluation of IAP's final, revised proposal not to award a contract to IAP under BOA Order # 2.

IAP then argues that amending the April 27, 2018 judgment in Case No. 18-400C is appropriate because the court committed "clear error" by not awarding IAP its bid and proposal costs stemming from two earlier, related protests, Case Nos. 17-1959C and 18-179C. IAP argues that the "Court of Federal Claims has the power, in appropriate

13

circumstances, to award bid and proposal costs from a previous case as part of the judgment in a subsequent case" and cites to <u>Klinge Corp. v. United States</u>, 87 Fed. Cl. 473 (2009) (<u>Klinge II</u>) for support.

In <u>Klinge II</u>, protestor Klinge Corporation (Klinge) brought a bid protest regarding a United States Marine Corps' procurement of Large Field Refrigeration Systems (LFRSs) pursuant to the General Services Administration Federal Supply Schedule (GSA FSS). <u>See</u> <u>Klinge II</u>, 87 Fed. Cl. at 474. The protestor, previous to its protest at issue in <u>Klinge II</u>, had brought an initial protest regarding the United States Marine Corps' procurement of LFRSs under a separate and distinct solicitation for an indefinite delivery, indefinite quantity contract for between 10 and 300 LFRSs, in which the United States Court of Federal Claims found in favor of Klinge and enjoined performance under the contract. <u>See</u> <u>Klinge Corp. v. United States</u>, 82 Fed. Cl. 127, 139 (2008) (<u>Klinge I</u>). Following the court's injunction in <u>Klinge I</u>, the agency cancelled the solicitation and recompeted the contract as a request for proposals under the GSA FSS, for which the protestor was not eligible to compete, and which precipitated Klinge's second protest in <u>Klinge II</u>. <u>See</u> <u>Klinge II</u>, 87 Fed. Cl. at 475. In <u>Klinge II</u>, protestor alleged that the cancellation of the solicitation for the agency's procurement of LFRSs and its decision to compete the procurement under the GSA FSS was arbitrary and capricious, and sought injunctive relief. <u>See id.</u> The <u>Klinge II</u> court did not award protestor injunctive relief, finding that the cancellation of the solicitation was not arbitrary or capricious. <u>See id.</u> The <u>Klinge II</u> court, however, awarded the protestor its bid and proposal costs incurred related to the protest at issue in <u>Klinge I</u> because the agency had "made the injunctive relief" previously awarded in <u>Klinge I</u> "irrelevant, at least insofar as plaintiff's real interests were concerned, namely, having a chance at award of a contract." <u>Klinge II</u>, 87 Fed. Cl. at 480.

Unlike the agency at issue in <u>Klinge II</u>, which cancelled the solicitation following the court's injunction, the Army Corps did not make prior injunctive relief for IAP "irrelevant." Regarding Case No. 17-1959C, IAP never was awarded injunctive relief. Rather, defendant announced it would take corrective action in Case No. 17-1959C at the January 8, 2018 hearing, after which the Army Corps, on January 11, 2018, did reevaluate IAP's initial proposal for BOA Order # 2. Following the reevaluation of its initial proposal and discussions with the agency, IAP then submitted its revised proposal to the Army Corps, on which the Army Corps completed its evaluation on January 31, 2018. Following the statement by defendant's counsel that corrective action would be taken in Case No. 17-1959C at the January 8, 2018 hearing, which was reiterated by defendant's counsel at the January 11, 2018 oral argument, and following defendant's evaluation of IAP's revised proposal, in the spirit of cooperation, as well as considering the urgency of the state of affairs in Puerto Rico, and still seeking to become part of the contracting activity for repairs and reconstruction to the Puerto Rican electrical system, IAP voluntarily dismissed Case No. 17-1959C on March 19, 2018. Bid and proposal costs for Case No. 17-1959C were not specifically requested by IAP at the time.

Regarding Case No. 18-179C, the court found that the Army Corps had not acted properly in its evaluation of IAP's revised proposal for BOA Order # 2 and ordered that discussions with IAP be reopened. The Army Corps complied with the court's decision in

Case No. 18-179C. On February 16, 2018, the Army Corps again held discussions with IAP, which precipitated IAP's submission of its final, revised proposal for an award under BOA Order # 2, which the Army Corps evaluated. The Army Corps, however, ultimately found that IAP's final, revised proposal for BOA Order # 2 remained not "acceptable" due to flaws within IAP's final, revised proposal. In Case No. 18-400C, the court then found that the Army Corps' evaluation of IAP's final, revised proposal for BOA Order # 2 and the Army Corps' decision not to make an award to IAP was not arbitrary or capricious. Unlike the protestor in Klinge II, who did not receive another "chance at award of a contract," IAP received multiple opportunities to be awarded a contract by the Army Corps but was not awarded the contract due to flaws identified by the Army Corps in IAP's final, revised proposal. Therefore, Klinge II is distinguishable and does not assist IAP's argument in favor of an award of bid and proposal costs to IAP for its earlier protests in Case Nos. 17-1959C and 18-179C to IAP. It was apparent as the facts in IAP's protests unfolded that, given the crisis in Puerto Rico, both IAP and the government were sincerely trying to address the urgency of restoring the electrical system in Puerto Rico, keeping contractors on site and continuing repairs, and, at the same time, giving IAP multiple opportunities to try to contribute to that effort. IAP and the government tried hard to develop a plan to accomplish multiple goals, but the government also was under no obligation to award a contract for a proposal that, after evaluation, the Army Corps considered technically unacceptable and which contained unacceptable pricing.

IAP also argues that it should be awarded bid and proposal costs because the Army Corps' evaluation of IAP's proposals for a portion of BOA Order # 2 "proved illusory," given that "Fluor continued to perform the original BOA 2, so that the amount of available work steadily dwindled over time." Fluor's continued performance on BOA Order # 2, however, was part of an urgent, unique, corrective action plan created by defendant to deal with the tragedy in Puerto Rico, with IAP's knowledge and buy-in, in order to correct for alleged flaws in the evaluation of IAP's initial proposal for BOA Order # 2, at issue in Case No. 17-1959C, and perhaps allow IAP to become eligible to receive an award under BOA Order # 2. The corrective action plan, devised by the defendant and accepted by the protestor, allowed IAP to continue to bid for a portion of the work to be performed in Puerto Rico under BOA Order # 2. During the January 8, 2018 hearing in Case Nos. 17-1959C and 18-4C, and the January 11, 2018 oral argument in Case No. 17-1959C, both the government and IAP expressed interest in coming to a resolution, including to allow IAP an opportunity to continue to offer for a part of BOA Order # 2, and an opportunity to evaluate a revised proposal from IAP, given the problems identified by the Army Corps in the earlier evaluation of IAP's initial proposal for BOA Order # 2, at issue in Case No. 17-1959C. As described above, at the January 8, 2018 hearing, defendant proposed a corrective action plan under which the agency would issue a stay of the modification to BOA Order # 1 and allocate the unused funds under BOA Order # 1 for a potential award to IAP under BOA Order # 2, to which IAP's counsel noted at the January 8, 2018 hearing does "sit with" him. Pursuant to the government's proposed corrective action, IAP was to be allowed to resubmit a proposal for evaluation for a possible award for a portion of BOA Order # 2.

After defendant decided to take the corrective action, however, at the January 11, 2018 oral argument in Case No. 17-1959C, defendant stated that since the January 8, 2018 hearing, the proposed corrective action plan discussed by the government at the January 8, 2018 hearing was "somewhat" altered, but that IAP's counsel was "on board with" the altered corrective action, to which, IAP's counsel did not object. Defendant's counsel explained at the January 11, 2018 oral argument that instead of staying the modification of BOA Order # 1, as previously noted by defendant's counsel at the January 8, 2018 hearing, the agency would issue a partial stop work order for $250.0 million on BOA Order # 2 as a potential award amount available only to IAP, since IAP, other than Fluor, was the only other original bidder for award under the BOA Order # 2 solicitation, and that Fluor would continue to perform under the originally awarded BOA Order # 2, to ensure as prompt as possible, continuing restoration of the Puerto Rican electrical system. Defendant's counsel also apprised the court at the January 11, 2018 oral argument that the agency had already began its corrective action plan, having already reevaluated IAP's initial proposal. At no point during the January 11, 2018 oral argument did IAP's counsel express any objections to defendant's corrective action plan. In fact, IAP's counsel notified the court at the January 11, 2018 oral argument that he was aware that the Army Corps had commenced its corrective action plan, when the Army Corps had reevaluated IAP's initial proposal for BOA Order # 2, and that IAP was awaiting receipt of the finalized amendment to the solicitation for BOA Order # 2. In addition, IAP's counsel, upon hearing of defendant's somewhat altered corrective action plan, noted at the January 11, 2018 oral argument that, "[w]e absolutely agree and appreciate what they [the agency] have put forth so far."

On January 12, 2018, IAP received Amendment 0003A to the solicitation, which stated that the ceiling price for a possible acceptable BOA Order # 2 award to IAP had been set at $250.0 million and that "Amendment 0003A is only in reference to IAP." IAP then submitted a revised proposal on January 18, 2018 and noted in its cover letter to the Army Corps that it had received Amendment 0003A and took "no exceptions to any of the requirements contained" within the solicitation, including Amendment 0003A. Following the Army Corps' evaluation of IAP's revised proposal, which was completed on January 31, 2018, the Army Corps once again held discussions with IAP in February 2018. Following discussions, IAP submitted a revised, technical proposal on February 22, 2018 and an additional revised, price proposal on February 26, 2018. IAP also noted in its February 22, 2018 and February 26, 2018 cover letters to its revised, technical and price proposals that it took "no exceptions to any of the requirements contained within" the solicitation and did not note any objection to the fact that Fluor was continuing to perform under BOA Order # 2. IAP willingly participated in defendant's corrective action, without objection, including that Fluor would continue to perform on the ground in Puerto Rico and that IAP would enter into further discussions with the Army Corps and have an opportunity to revise its proposal for a portion of BOA Order # 2. Thus, protestor's argument that Fluor's performance under BOA Order # 2 resulted in "illusory" relief is untimely and unpersuasive.

IAP further argues that it should recover its bid and proposal costs for Case Nos. 17-1959C and 18-179C because IAP only received a "portion of the relief it sought," i.e.,

a chance to compete for only $250.0 million, and not for the original $831.0 million available under BOA Order # 2. IAP cites to CNA Corp. v. United States, 83 Fed. Cl. 1 (2008) (CNAC III), aff'd, 332 F. App'x 638 (Fed. Cir. 2009), as support for this argument.[5] In CNAC I, the protestor had alleged that it was arbitrarily and capriciously excluded from the award of a contract due to the agency's adverse ethics decision on a former employee and requested that the court resolicit the 2007 RFP or award it the contract. See CNAC III, 83 Fed. Cl. at 2 (discussing CNAC I). The CNAC I court found that the agency's ethics decision was flawed, ordered that the agency vacate its initial ethics decision and awarded protestor its bid and proposal costs. See CNAC III, 83 Fed. Cl. at 3. In CNAC I, the agency did not resolicit the 2007 RFP or further evaluate the protestor's offer. See CNAC III, 83 Fed. Cl. at 9. On a motion to strike the CNAC I protestor's subsequent application for bid and proposal costs, defendant challenged the award of both bid and proposal costs and injunctive relief, arguing that the protestor "essentially will have obtained a double-recovery." CNAC III, 83 Fed. Cl. at 9. In CNAC III, the court explained that the court had the discretion to award both bid and proposal costs and injunctive relief, and that "[t]his is particularly true when the injunctive relief issued in CNAC I was partial, neither setting aside the 2007 awards nor ordering resolicitation or reassessment of the 2007 solicitation." Id. at 10.

In CNAC III, defendant also argued that the court did not have jurisdiction to award protestor its bid and proposal costs because protestor's application for such costs was filed after judgment was entered, and, thus, according to defendant, the "case is now closed." CNAC III, 83 Fed. Cl. at 5. The CNAC III court, however, stated, having ordered bid and proposal costs to the protestor, that:

> [F]inality was lacking, with the court still needing to set a dollar amount for bid preparation and proposal cost damages resulting from defendant's arbitrary and capricious behavior as found in CNAC I. Prior to the issuance of the decision in CNAC I, as is generally true in bid protests, the plaintiff had not submitted a detailed breakdown of its bid preparation and proposal costs, or other costs. . . . It was always the intention of the court, and it is the normal course of events, that a detailed cost breakdown would be

---

[5] This court issued three separate decisions in CNA Corp. v. United States. The court first issued an Order in CNA Corp. v. United States, Case No. 07-858C (Fed. Cl. Jan. 3, 2008) (CNAC I), appeal dismissed, 274 F. App'x 877 (Fed. Cir. 2008), the protestor's post-award protest of a 2007 request for proposals. See CNAC I, Case No. 07-858C (Fed. Cl. Dec. 6, 2007). The court then issued a published Opinion in a separate protest regarding the protestor's pre-award protest of a 2008 request for proposals, a separate and distinct solicitation from the 2007 request for proposals at issue in CNAC I. See CNA Corp. v. United States, 81 Fed. Cl. 722, 723 (2008) (CNAC II). Following which, the court issued a published Opinion in CNAC III regarding the court's ruling on the CNAC III defendant's motion to strike the protestor's application for bid and proposal costs, which is the Opinion that IAP cites to in its filings before this court in the above-captioned protest. See CNAC III, 83 Fed. Cl. at 4.

17

submitted following the issuance of the court's opinion on the bid protest. Issuance by the clerk's office of a document titled "Judgment" did not change that fact. Plaintiff proceeded properly by submitting an application for bid preparation and proposal costs, including a detailed cost breakdown, for review once the defendant withdrew its appeal from the reviewing court. Similarly, it would be an unproductive use of everyone's time to submit or review a detailed cost submission prior to resolution of the appeal, in this case filed by the defendant. Therefore, the court maintains jurisdiction to review CNAC's application for bid preparation and proposal costs and to review plaintiff's request regarding the quantum of damages to be awarded.

CNAC III, 83 Fed. Cl. at 6. The CNAC III court then stated that even if judgment was final, it would still be proper to award bid preparation and proposal costs to CNAC pursuant to RCFC 60(b)(6), which allows a court to relieve a party from a final order for "'any other reason justifying relief from the operation of the judgment.'" CNAC III, 83 Fed. Cl. at 8 (quoting RCFC 60(b)(6)). The court explained that "[i]n the instant case, CNAC is without fault, and the circumstances of this case are sufficient to warrant relief to plaintiff, if the January 7, 2008 Judgment were to otherwise bar the court from reviewing plaintiff's quantum application for the bid preparation costs awarded to plaintiff by this court." Id.

CNAC III, however, does not resolve the issues currently presented by IAP, including that IAP should recover bid and proposal costs, because it was only afforded "partial" relief. Unlike the court-ordered injunctive relief at issue in CNAC III, the partial relief that IAP received is a result of the Army Corps' corrective action, in which protestor agreed to participate. If IAP believed that competing for an award of $250.0 million under BOA Order # 2 was unfair or did not provide sufficient relief, IAP should have raised its concern in this regard before agreeing to and participating in defendant's decision to set apart $250.0 million for a possible award to IAP, engaging in repeated discussions with the Army Corps, and submitting revised proposals for evaluation by the agency. IAP did not protest defendant's decision to set apart $250.0 million as a potential award and, instead, willingly participated in the Army Corps' evaluations of IAP's various iterations of submitted, revised proposals for the possible $250.0 million available. The crisis in Puerto Rico after Hurricane Maria was acknowledged as the motivation for all parties to try to allow continued, on the ground, repair to the electrical system, and IAP's counsel acknowledged this at the January 8, 2018 hearing in Case Nos. 17-1959C, IAP's protest of defendant's evaluation of its initial proposal for BOA Order # 2, and Case No. 18-4C, IAP's protest of the modification of BOA Order # 1. IAP's counsel noted that "[a]ll along, we haven't actually wanted to stop the work in Puerto Rico . . . ." Again at the February 15, 2018 hearing in Case No. 18-179C, IAP's protest of the Army Corps' evaluation of its revised proposal, IAP's counsel stated that "all along, we have said that we're not interested in, you know, making undue difficulties and throwing up roadblocks unnecessarily. We really just want to get the work done."

In addition, IAP's argument that it was provided only partial relief when it was only allowed to compete for $250.0 million under BOA Order # 2 instead of $831.0 million originally obligated to BOA Order # 2 is overcome by IAP's acceptance of Amendment

0003A without any exception, which specifically set the price ceiling for IAP at $250.0 million when it competed for a portion of BOA Order # 2. The United States Court of Appeals for the Federal Circuit explained in <u>Bannum v. United States</u>, 779 F.3d 1376 (Fed. Cir. 2015) that,

> [a] bidder that challenges the terms of a solicitation in the Court of Federal Claims generally must demonstrate that it objected to those terms "prior to the close of the bidding process." <u>Blue & Gold Fleet, L.P. v. United States</u>, 492 F.3d 1308, 1315 (Fed. Cir. 2007). If it cannot do so, the bidder "waives its ability to raise the same objection afterwards in a § 1491(b) action." <u>Id.</u>; <u>see</u> <u>also</u> <u>COMINT [Sys. Corp. v. United States</u>, 700 F.3d 1377, 1381-82 (Fed. Cir. 2012)].

<u>Bannum v. United States</u>, 779 F.3d at 1380 (holding that protestor's argument that solicitation was "materially defective" because it required compliance with the Prison Rape Elimination Act of 2003 and because the government refused to provide pricing guidance was waived). Similarly stated, if a bidder fails to challenge a patent error in an amendment to the solicitation "prior to the award of the contract," the bidder has waived its challenge. <u>COMINT Sys. Corp. v. United States</u>, 700 F.3d at 1382; <u>see</u> <u>also</u> <u>Ne. Constr., Inc. v. United States</u>, 119 Fed. Cl. 596, 611 (2015).

On January 12, 2018, IAP received Amendment 0003A to BOA Order # 2, which specifically identified the price ceiling as $250.0 million for the portion of BOA Order # 2, for which IAP would be submitting a revised proposal, and which revised proposal was to be evaluated for acceptability for an award. IAP then submitted its revised proposal on January 18, 2018 and noted in its cover letter to the Army Corps that it had received Amendment 0003A and took "no exceptions to any of the requirements contained" within the solicitation, including Amendment 0003A. Following the Army Corps' evaluation of IAP's proposal in January of 2018, the Army Corps, once again, reopened discussions with IAP in February of 2018. Following discussions, IAP submitted a newly, revised, technical proposal on February 22, 2018 and a newly, revised, price proposal on February 26, 2018. IAP also noted in its February 22, 2018 and February 26, 2018 cover letters to its technical and price proposals respectively, that it took "no exceptions to any of the requirements contained within" the solicitation and amendments to the solicitation. If IAP was planning to take issue with the ceiling amount of $250.0 million under BOA Order # 2, IAP should have raised its concerns before submitting its revised proposal on January 18, 2018 and certainly before the Army Corps issued its evaluation decision on IAP's revised proposal on January 31, 2018, or prior to submitting its revised technical and price proposals to the Army Corps on February 22, 2018 and February 26, 2018. Rather, like the bidder in <u>COMINT</u>, IAP "chose instead to wait and see whether it would receive an award of the contract." <u>COMINT Sys. Corp. v. United States</u>, 700 F.3d at 1383. Like the bidder in <u>COMINT</u>, IAP cannot later "'come forward with [its objections] to restart the bidding process,' and get a second bite at the apple." <u>Id.</u> (alteration in original) (quoting <u>Blue & Gold Fleet, L.P. v. United States</u>, 492 F.3d at 1314). IAP, therefore, has waived its challenge to the agency's decision to set the ceiling price for IAP's submission under

BOA Order # 2 at $250.0 million. See COMINT Sys. Corp. v. United States, 700 F.3d at 1383.

Regardless, IAP still would have to meet the general standards for recovery of bid and proposal costs in order to recover bid and proposal costs for Case Nos. 17-1959C and 18-179C. Those standards have been described as follows:

> "only if three conditions are satisfied: (i) the agency has committed a prejudicial error in conducting the procurement; (ii) that error caused the protester to incur unnecessarily bid preparation and proposal costs; and (iii) the costs to be recovered are both reasonable and allocable, i.e., incurred specifically for the contract in question."

Q Integrated Cos., LLC v. United States, 133 Fed. Cl. 479, 485 (2017) (emphasis in original) (quoting Reema Consulting Servs. v. United States, 107 Fed. Cl. 519, 532 (2012)); CMS Contract Mgmt. Servs. v. United States, 123 Fed. Cl. 534, 536 (2015); Insight Sys. Corp. v. United States, 115 Fed. Cl. 734, 738-39 (2014).

Regarding the first condition for recovery of bid and proposal costs, that "the agency has committed a prejudicial error in conducting the procurement," Q Integrated Cos., LLC v. United States, 133 Fed. Cl. at 485 (internal quotation marks and citation omitted), IAP cannot meet this requirement for recovery of its bid and proposal costs for Case No. 17-1959C, IAP's protest of its initial proposal for BOA Order # 2. IAP cannot meet this requirement because this court did not make a finding that the agency had committed prejudicial error, although the court did suggest possible problems with the procurement at the January 8, 2018 hearing and the January 11, 2018 oral argument, prior to the agency taking corrective action in Case No. 17-1959C. Although IAP argues that the court "held multiple hearings at which it expressed grave concerns with the Corps' conduct of the procurement and indicated that it was likely to enjoin the Corps from proceeding on BOA 2," such expressions of concern, which were not conclusive or final, does not equate to a finding and determination of error by the court, or more particularly of prejudicial error. In Case No. 17-1959C, no formal order was entered determining prejudicial error, and all parties agreed to move forward to the reevaluation of IAP's initial proposal and to give IAP an opportunity to continue to compete for an award under BOA Order # 2. An award of bid and proposal costs is unwarranted if no decision on the merits has been entered in a bid protest. See Q Integrated Cos., LLC v. United States, 132 Fed. Cl. 638, 642-43 (2017) ("An award of bid preparation and proposal costs is thus inextricably dependent on the determination of the merits of the protestor's claim, and must be addressed by the court as part of the merits of that claim."); see also AM Gen., LLC v. United States, 115 Fed. Cl. 653, 704 (2014) ("As plaintiff has not succeeded on the merits of its claim, recovery of bid and proposal costs is unwarranted." (citing PGBA, LLC v. United States, 60 Fed. Cl. 196, 222, aff'd, 389 F.3d 1219 (Fed. Cir. 2004)); Lion Raisins, Inc. v. United States, 69 Fed. Cl. 32, 36 (2005) ("Since the government has cancelled its solicitations for the bids at issue in this case, and since, therefore, making a decision on the merits of the award is no longer possible, the Court has no power to decide whether Plaintiff is entitled to bid preparation and proposal costs and finds that

those claims for relief are also moot."); <u>CCL Serv. Corp. v. United States</u>, 43 Fed. Cl. 680, 690 (1999) ("[A] decision on the merits of the award must be made prior to the award of bid preparation and proposal costs. Without analysis of the merits of the award, the court lacks a basis to grant further relief."). Furthermore, a court's remarks during a hearing do not constitute a binding decision on the merits. <u>See</u> <u>Dellew Corp. v. United States</u>, 855 F.3d 1375, 1381 (Fed. Cir. 2017) (noting that a "non-binding oral comment" made by the United States Court of Federal Claims is different from an official "ruling" and that the "Court of Federal Claims knows how to rule orally when the circumstances so require" (citing <u>Orion Tech., Inc. v. United States</u>, 101 Fed. Cl. 492, 493 (2011)). As the Federal Circuit explained in <u>Dellew</u>, "experience teaches us that comments made from the bench do not always match the content of a later written opinion," and, thus, potentially relying on a court's oral comments during a hearing would require the "parties to divine the presiding court's actual holding from the often messy entrails of spontaneous comments." <u>Dellew Corp. v. United States</u>, 855 F.3d at 1381. For this reason, the <u>Dellew</u> court noted that it generally relies "'on the court's written opinion rather than its oral statement during a hearing.'" <u>Id.</u> (quoting <u>Galen Med. Assocs., Inc. v. United States</u>, 369 F.3d 1324, 1331 (Fed. Cir.), <u>reh'g denied</u> (Fed. Cir. 2004)).

The court also notes that in IAP's RCFC 59(e) motion to alter or amend the judgment in Case No. 18-400C, IAP does not specify to which of the hearings it is referring when arguing in favor of an award of its bid and proposal costs for Case No. 17-1959C. IAP, however, may have been referring to the two proceedings, the January 8, 2018 hearing and the January 11, 2018 oral argument, during which the court expressed to the parties that it had perceived "problems" and "concerns" with defendant's initial evaluation of IAP's initial proposal for BOA Order # 2. The court, however, did not issue a decision on the merits at either proceeding. As of January 8, 2018, briefing was not complete on the parties' cross-motions for judgment on the administrative record in Case No. 17-1959C and the court had not yet heard oral argument on those cross-motions. At the January 11, 2018 oral argument in Case No. 17-1959C, the court noted at the outset that it still had "some questions" for the parties regarding Case No. 17-1959C. Before the court could issue a decision on the merits in Case No. 17-1959C, defendant had begun its corrective action prior to the January 11, 2018 oral argument, when it reevaluated IAP's initial proposal. Then, on January 12, 2018, the Army Corps held discussions with IAP. Following the government's completed corrective action, IAP moved to voluntarily dismiss the protest in Case No. 17-1959C on March 19, 2018, without making a specific request for bid and proposal costs in Case No. 17-1959C. On that same day, March 19, 2018, the Clerk of the Court of the United States Court of Federal Claims entered judgment and dismissed IAP's protest in Case No. 17-1959C. In sum, the court did not make a finding that defendant had committed prejudicial error in the course of the procurement which led to Case No. 17-1959C. Moreover, ultimately, after several renewed discussions between the government and IAP, and several revised proposals submitted to the agency by IAP, IAP's final, revised proposal was, according to this court, reasonably evaluated by the Army Corps and found unacceptable by the agency, as determined in Case No. 18-400C.

Regarding the second condition of recovery of bid and proposal costs, "that error caused the protester to incur unnecessarily bid preparation and proposal costs," <u>Q</u>

Integrated Cos., LLC v. United States, 133 Fed. Cl. at 485 (internal quotation marks and citation omitted), costs are not unnecessarily incurred when a contractor "retains the opportunity to compete for the task order." Square One Armoring Serv., Inc. v. United States, 123 Fed. Cl. 309, 330 (2015) (finding that protestor was not entitled to seek bid preparation and proposal costs when protestor had the opportunity to compete in the re-solicitation of the contract); see also Tech. Innovation, Inc. v. United States, 93 Fed. Cl. 276, 279 n.2 (2010) (noting that a claim for bid preparation and proposal costs would be mooted by a re-procurement because the "second opportunity to compete for the contract makes the investment in the proposal [ ] no longer a needless expense, and plaintiff may yet see the fulfillment of the promise of fair and impartial consideration which induced it to spend its money to prepare its bid" (alteration in original) (internal quotation marks and citations omitted)).[6] As a Judge of this court explained,

> [a] reevaluation restores to a victim of arbitrary and capricious procurement activity its substantial chance to receive the contract award. Typically, this would also eliminate the basis for an award of bid preparation and proposal costs, as the investment in the proposal is no longer a "needless expense," Heyer Products [Co. v. United States], 135 Ct. Cl. [63,] 71, 140 F. Supp. 409[, 413-14 (1956)], and the bidder may yet see the fulfillment of the promise of "fair and impartial consideration" which "induced it to spend its money to prepare its bid." Id. at 69, 140 F. Supp. 409.

Beta Analytics Int'l, Inc. v. United States, 75 Fed. Cl. 155, 159 (2007). Following both protests, Case Nos. 17-1959C and 18-179C, IAP, hoping to get an award, retained the opportunity to compete for an award under BOA Order # 2.  Following Case No. 17-1959C, IAP participated in discussions with the Army Corps and submitted its revised proposal on January 18, 2018. Following Case No. 18-179C, IAP participated in discussions with the Army Corps and submitted updated technical and price proposals on February 22, 2018 and February 26, 2018. The Army Corps ultimately found that IAP's February 2018 final, revised, technical and price proposals remained not "acceptable" due to remaining pricing and technical deficiencies. In Case No. 18-400C, the court found that the Army Corps' February 2018 evaluation of IAP's final, revised proposal was not arbitrary and capricious. IAP did not receive a contract award due to flaws identified by the Army Corps in its February 2018 final, revised, technical and price proposals. The costs incurred by IAP stemming from Case Nos. 17-1959C and 18-179C were not unnecessarily incurred, given IAP's opportunity to continue to compete for a contract award under BOA Order # 2. In sum, having failed to prove that the agency committed a prejudicial error in the procurement at issue in Case No. 17-1959C, and that IAP

---

[6] The court notes that in an unpublished Opinion, a Judge of this court dismissed a protest when the agency took corrective action to re-conduct its source selection decision among protestor and other bidders. See B&B Med. Servs., Inc., v. United States, Case No. 13-463C, 2014 WL 3587275, at *8 (Fed. Cl. June 23, 2014). The Judge also denied protestor's request for bid and proposal costs because such request was not yet "ripe" as the protestor "remains in the competition for the contract and may be awarded the contract." Id. at *7 n.18.

unnecessarily incurred bid and proposal costs stemming from Case No. 17-1959C, IAP would not be eligible for a recovery of bid and proposal costs stemming from Case No. 17-1959C. Likewise, having failed to prove that IAP unnecessarily incurred bid and proposal costs stemming from Case No. 18-179C, IAP was not eligible for recovery of bid and proposal costs stemming from Case No. 18-179C. IAP also has failed to demonstrate the type of extraordinary circumstances which would justify amending the judgment in any of the protests submitted by IAP. Therefore, the court denies the RCFC 59(e) motion brought by IAP in Case No. 18-400C.

## II.   IAP's RCFC 60(b)(5) and RCFC 60(b)(6) motions for relief from the judgments in Case Nos. 17-1959C and 18-179C.

In the alternative to its RCFC 59(e) motion in Case No. 18-400C, IAP moves for relief from the judgment in Case Nos. 17-1959C and 18-179C pursuant to RCFC 60(b)(5) and RCFC 60(b)(6). Turning first to IAP's request for relief pursuant to RCFC 60(b)(5), IAP argues that it is entitled to relief from the judgments in Case Nos. 17-1959C and 18-179C pursuant to RCFC 60(b)(5) because prospectively applying these two judgments will "result in inequity" because IAP would be deprived of "any meaningful remedy" for the Army Corps' allegedly unreasonable evaluation of IAP's initial proposal in Case No. 17-1959C, and for the Army Corps' unreasonable evaluation of its revised proposal in Case No. 18-179C. Under RCFC 60(b), a court may, "[o]n motion and just terms," relieve a party from a final judgment for any of the following reasons:

(1)   mistake, inadvertence, surprise, or excusable neglect;
(2)   newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b);
(3)   fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4)   the judgment is void;
(5)   the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6)   any other reason that justifies relief.

RCFC 60(b); see also Lone Star Indus., Inc. v. United States, 111 Fed. Cl. 257 (2013). As indicated in RCFC 60(c) (2018), the subsection of RCFC 60 discussing the filing deadline for a RCFC 60(b) motion, "[a] motion under RCFC 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."  RCFC 60(c).

As this court previously indicated in CNAC III:

In determining whether a motion is properly classified under RCFC 60(a) or RCFC 60(b), the United States Court of Appeals for the Federal Circuit has stated:

Rule 60(a) affords relief from minor clerical mistakes or errors arising from simple oversight or omission. See James W. Moore and Jo Deshap Lucas, Moore's Federal Practice ¶ 60.06[1] (2d ed. 1993); see also United States v. Bealey, 978 F.2d 696, 699 (Fed. Cir. 1992). It is intended to allow the judgment to "speak the truth," but not to substantially alter the rights of the parties thereto. See [11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2854 (1973 & Supp. 1993)]. Errors of a more substantial nature are more appropriately correctable under subdivision [60](b). See Moore, supra, ¶ 60.06[4].

Patton v. Sec'y of the Dep't of Health and Human Servs., 25 F.3d 1021, 1029 (Fed. Cir. 1994).

CNAC III, 83 Fed. Cl. at 7.

A request for relief from a judgment is not intended to permit a party to retry its case when it previously was afforded a full and fair opportunity to do so. The United States Court of Appeals for the Federal Circuit has stated that: "The decision whether to grant reconsideration lies largely within the discretion of the [trial] court." Yuba Natural Res., Inc. v. United States, 904 F.2d at 1583; see also Entergy Nuclear FitzPatrick, LLC v. United States, 711 F.3d at 1386 ("This court reviews the trial court's decision on reconsideration for an abuse of discretion."); Sioux Tribe of Indians v. United States, 14 Cl. Ct. 94, 101 (1987), aff'd, 862 F.2d 275 (Fed. Cir. 1988), cert. denied, 490 U.S. 1075 (1989). "'As a remedial provision, Rule 60(b) is to be "liberally construed for the purpose of doing substantial justice."'" Curtis v. United States, 61 Fed. Cl. 511, 512 (2004) (quoting Patton v. Dep't of Health & Human Servs., 25 F.3d at 1030 (quoting 7 James W. Moore and Jo Desha Lucas, Moore's Federal Practice ¶¶ 60.18[8], 60.19 (2d ed. 1993))). In determining whether to grant relief under Rule 60(b), "[t]he court has discretion regarding whether to grant relief under Rule 60(b), 'and the court may weigh equitable considerations in the exercise of its discretion.'" Curtis v. United States, 61 Fed. Cl. at 512 (quoting Dynacs Eng'g Co. v. United States, 48 Fed. Cl. 240, 241-42 (2000)).

In a motion for relief from final judgment, "'[t]he movant . . . must do more than merely reassert[ ] arguments which were previously made and carefully considered by the court.'" Osage Tribe of Indians of Okla. v. United States, 97 Fed. Cl. at 348 (quoting Bannum, Inc. v. United States, 59 Fed. Cl. 241, 243 (2003)) (alterations in original) (discussing the standards applicable to both RCFC 59(a) and RCFC 60(b)). "'[T]he moving party must show: (1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice.'" Osage Tribe of Indians of Okla. v. United States, 97 Fed. Cl. at 348 (alteration in original) (quoting Matthews v. United States, 73 Fed. Cl. at 525). A motion for relief from judgment is not an opportunity to relitigate one's case or present evidence that the movant could have brought earlier.  See Fiskars, Inc. v. Hunt

Mfg. Co., 279 F.3d at 1383 ("We see no reason why [movant] should be entitled to a second opportunity to present its case. Just as Rule 60(b)(6) is unavailable to reopen a judgment on grounds of newly discovered evidence (that existed at the time of trial), it is unavailable to reopen a judgment on the grounds that new evidence has come into being after the trial has been concluded.").

The United States Court of Appeals for the Federal Circuit explained in Pirkl v. Wilkie, 906 F.3d 1371 (2018),

> In federal court litigation, Rule 60(b)(5) provides that a court may set aside a judgment that is final when that judgment is "based on an earlier judgment that has been reversed or vacated." Fed. R. Civ. P. 60(b)(5). "This ground is limited to cases in which the present judgment is based on the prior judgment in the sense of claim or issue preclusion." 11 Charles Alan Wright et al., Federal Practice and Procedure § 2863 (3d ed. 2012).

Pirkl v. Wilkie, 906 F.3d at 1381 n.6;[7] see also Travelers Indem. Co. v. United States, 81 Fed. Cl. at 510 ("RCFC 60(b)(5), the counterpart in this court to Fed. R. Civ. P. 60(b)(5), provides in pertinent part that a party may be relieved from a final judgment where 'the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application.'" (footnote omitted) (quoting RCFC 60(b)(5)). Additionally, Rule 60(b)(5) of the Federal Rules of Civil Procedure "appears to allow relief from a judgment where circumstances have changed such that continued application of the judgment would be inequitable." Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc., 714 F.3d 1289, 1299 n.1 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2013). A change in circumstances that would justify relief would be "a significant change either in factual conditions or in law" that "renders continued enforcement detrimental to the public interest." Horne v. Flores, 557 U.S. 433, 447 (2009); see also Q Integrated Cos., LLC v. United States, 131 Fed. Cl. 125, 131 ("[A] party may seek relief from a judgment if 'a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest.'" (quoting Horne v. Flores, 557 U.S. at 447)), appeal dismissed (Fed. Cir. 2017). For example, in Horne, the United States Supreme Court explained that granting a Federal Rule of Civil Procedure 60(b)(5) motion may be appropriate in circumstances when a party is seeking to vacate an injunction or judgment in a case regarding "institutional reform," because,

---

[7] As a Judge of this court explained in a footnote in Travelers Indemnity Co. v. United States, 81 Fed. Cl. 508 (2008), "[e]xcept for stylistic differences, primarily those introduced by way of the 2007 amendments to the Federal Rules of Civil Procedure, RCFC 60 in all material respects has the same effect as Fed. R. Civ. P. 60." Travelers Indem. Co. v. United States, 81 Fed. Cl. at 510 n.1 (citing Rules Committee Note to RCFC 60 (2002 revision)).

[f]or one thing, injunctions issued in such cases often remain in force for many years, and the passage of time frequently brings about changed circumstances—changes in the nature of the underlying problem, changes in governing law or its interpretation by the courts, and new policy insights—that warrant reexamination of the original judgment.

Second, institutional reform injunctions often raise sensitive federalism concerns. Such litigation commonly involves areas of core state responsibility, such as public education.

Horne v. Flores, 557 U.S. at 447-48.

IAP argues that it is entitled to relief pursuant to RCFC 60(b)(5) in Case Nos. 17-1959C and 18-179C because the two judgments result in "inequity" and deprive IAP of "any meaningful remedy" for the Army Corps' allegedly unreasonable evaluation of IAP's initial proposal in Case No. 17-1959C, and for the Army Corps' unreasonable evaluation of its revised proposal in Case No. 18-179C. IAP, however, ultimately received the remedy it requested in Case Nos. 17-1959C and 18-179C, which was a continuing, fair and reasonable opportunity to compete for an award under BOA Order # 2, including further discussions with the Army Corps. Following Case No. 17-1959C, IAP received a chance to revise its proposal, and a further evaluation of its revised proposal for an award under BOA Order # 2. Following the court's ruling on February 15, 2018 in Case No. 18-179C, the Army Corps again held discussions with IAP, and IAP, again, received an opportunity to submit a newly, revised proposal to the Army Corps for evaluation, although IAP ultimately also protested the Army Corps' February 2018 evaluation of its final, revised proposal in Case No. 18-400C. With respect to the February 2018 evaluation by the Army Corps of IAP's final, revised proposal, which resulted in Case No. 18-400C, the court found that the Army Corps had reasonably evaluated IAP's latest proposal and had reasonably concluded that IAP's final, revised proposal was not "acceptable" due to both remaining technical and pricing flaws. After review, this court concluded that IAP had received a fair and reasonable evaluation by the Army Corps of its final, revised proposal, the remedy that IAP had requested in both Case No. 17-1959C and Case No. 18-179C.

In addition, "inequitable" circumstances that would justify a grant of a RCFC 60(b)(5) motion are those in which the moving party has presented "a significant change either in factual conditions or in law" that "renders continued enforcement detrimental to the public interest." Horne v. Flores, 557 U.S. at 447; see also Q Integrated Cos., LLC v. United States, 131 Fed. Cl. at 131. IAP has not alleged any changes in law, nor is the court aware of any changes in the law that would require the re-opening of the judgments in Case Nos. 17-1959C and 18-179C. IAP also has not presented changed factual circumstances that support a finding that the continued application of the judgments in Case Nos. 17-1959C and 18-179C is "detrimental to the public interest." The judgments in Case Nos. 17-1959C and 18-179C were entered on March 19, 2018, upon IAP's motion for voluntary dismissal of those two protests. In addition, both Case No. 17-1959C and Case No. 18-179C were dismissed, without prejudice, giving IAP the opportunity to file new protests related to the same issues in both protests, which IAP did not do. Therefore,

IAP's argument that the continued application of the judgments in Case Nos. 17-1959C and 18-179C is inequitable is not persuasive.

IAP then argues that it is entitled to relief from both judgments in Case Nos. 17-1959C and 18-179C pursuant to RCFC 60(b)(5) because of "changed conditions regarding IAP's ability to seek bid and proposal costs in Case 18-400." According to IAP, it believed it could request it bid and proposal costs stemming from Case Nos. 17-1959C and 18-179C later in its subsequent protest of the Army Corps' evaluation of its final, revised proposal in Case No. 18-400C, and, therefore, did not request such costs before dismissing Case Nos. 17-1959C and 18-179C on March 19, 2018. IAP fails to provide persuasive support for its assertion that it subsequently could receive bid and proposal costs. IAP also claims that the circumstances changed when the court denied its request for bid and proposal costs stemming from these two protests in its later filed complaint in Case No. 18-400C. On April 9, 2018, the court issued a ruling in Case No. 18-400C in the government's favor, and on April 27, 2018, the court issued an Order dismissing Case No. 18-400C, without an award of bid and proposal costs to IAP for its previous, related protests of BOA Order # 2 in Case Nos. 17-1959C and 18-179C.

As indicated above, RCFC 60(b)(5) allows relief from a judgment "where circumstances have changed such that continued application of the judgment would be inequitable." Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc., 714 F.3d at 1299 n.1. As an initial matter, although IAP may have believed it could request its bid and proposal costs at a later date, IAP certainly could have requested such costs before voluntarily dismissing Case No. 17-1959C and Case No. 18-179C on March 19, 2018. IAP's choice only to specifically request its bid and proposal costs stemming from Case Nos. 17-1959C and 18-179C in its complaint for Case No. 18-400C, its final protest, was its decision. IAP, therefore, bore the risk of waiting to request such costs as part of this final protest, which might never have occurred if IAP had been awarded a contract under BOA Order # 2. Additionally, even if IAP had requested its bid and proposal costs before dismissing Case No. 17-1959C and Case No. 18-179C, and before judgment was entered on March 19, 2018 in Case No. 17-1959C and Case No. 18-179C, IAP would not have been entitled to such costs, based on IAP's continuing opportunity to compete for an award under BOA Order # 2. See, e.g., Square One Armoring Serv., Inc. v. United States, 123 Fed. Cl. at 330. The court recognizes that IAP not only wanted to receive an award under BOA Order # 2, but also was concerned about the ongoing crisis in Puerto Rico and was reluctant to interrupt the ongoing repairs to the electrical grid system awarded under the prior awards pursuant to BOA Order # 1 and BOA Order # 2. IAP, however, was given multiple opportunities to continue to compete for work under BOA Order # 2 and afforded multiple opportunities for discussions with the Army Corps and opportunities to revise its proposal for BOA Order # 2. Moreover, the court upheld the agency's last evaluation of IAP's final, revised proposal for work under BOA Order # 2 in Case No. 18-400C as not reasonable. Thus, IAP's argument that there has been "changed conditions" meriting relief in Case Nos. 17-1959C and 18-179C pursuant to RCFC 60(b)(5) is unpersuasive.

IAP also argues that "IAP was not alone in understanding that bid and proposal costs were an available remedy." According to protestor, the court "indicated its

understanding that bid and proposal costs would be available to IAP" at the February 15, 2018 hearing in Case No. 18-179C, during which the court issued its ruling for Case No. 18-179C, IAP's protest of the Army Corps' evaluation of IAP's revised proposal. At the February 15, 2018 hearing in Case No. 18-179C, the government indicated to the court that March 19, 2018 was the current projected date that all government contractors were projected to be demobilized from Puerto Rico.[8] In light of the projected, possible March 19, 2018 demobilization date, the court noted at the February 15, 2018 hearing, at which the court ruled that the Army Corps had unreasonably evaluated IAP's revised proposal for BOA Order # 2, that "relief or an award of a contract, other than bid and proposal costs," could potentially be "futile." The court, thus, indicated that bid and proposal costs were a potential form of relief for IAP in Case No. 18-179C. The court's observation that bid and proposal costs were a potential remedy in Case No. 18-179C, however, does not assist IAP's attempt to recover its bid and proposal costs in Case Nos. 17-1959C and 18-179C at a later date pursuant to RCFC 60(b)(5). Moreover, as previously indicated, a court's not final comments made at a hearing are not binding on the court. See Dellew Corp. v. United States, 855 F.3d at 1381.

In addition, the court did not discuss at the February 15, 2018 hearing whether or not IAP could recover its bid and proposal costs for its first protest in Case No. 17-1959C. Also, even though the court indicated at the February 15, 2018 hearing that bid and proposal costs were potentially recoverable for Case No. 18-179C, the court did not indicate that IAP could seek its bid and proposal costs in Case No. 18-179C after IAP participated further in the competition for a portion of BOA Order # 2, following the court's February 15, 2018 ruling or after the protest was dismissed. Following the court's February 15, 2018 ruling in Case No. 18-179C, and despite being notified of the projected March 19, 2018 demobilization date, IAP actively and willingly pushed forward with its proposal submissions to gain an award of a portion of BOA Order # 2. Following the court's February 15, 2018 ruling in Case No. 18-179C, IAP retained the chance of award of BOA Order # 2 when it submitted a final, revised, technical proposal on February 22, 2018 and a final, revised, price proposal on February 26, 2018 for evaluation by the Army Corps. The Army Corps, however, ultimately found IAP's final, revised, technical and price proposals were not "acceptable" for award, a decision that this court found to be reasonable when it decided Case No. 18-400C, and, a decision IAP has not challenged. Moreover, IAP chose to voluntarily dismiss its protest in Case No. 18-179C on March 19, 2018 without first specifically asking for bid and proposal costs, well after the February 15, 2018 hearing in Case No. 18-179C, at which the court issued its ruling in Case No. 18-179C. At the time, IAP remained in the competition for a portion of the award pursuant to BOA Order # 2. As previously indicated, bid and proposal costs are not recoverable when a contractor retains a chance to compete for an award under the original solicitation. See, e.g., Square One Armoring Serv., Inc. v. United States, 123 Fed. Cl. at 330. Contrary to IAP's position, the court's comment at the February 15, 2018 hearing that bid and proposal costs were a potential remedy in Case No. 18-179C does not assist IAP's position in favor of reopening the judgments in Case Nos. 17-1959C and 18-179C pursuant to RCFC 60(b)(5).

---

[8] The actual date for total demobilization ultimately was extended past March 19, 2018.

IAP also claims that "even the government recognized that bid and proposal costs were an available remedy" during the February 13, 2018 oral argument on IAP's motion for injunctive relief in Case No. 18-179C, IAP's protest of the Army Corps' evaluation of its revised proposal. At the February 13, 2018 oral argument in Case No. 18-179C, defendant's counsel noted that "if the Court was going to decide that there was an arbitrary and capricious action [in Case No. 18-179C], the remedy would be bid and proposal costs" since, the alternative relief requested by IAP, discussions with IAP and an evaluation of an updated proposal submitted by IAP under BOA Order # 2, in light of the upcoming demobilization of government contractors from Puerto Rico projected for March 19, 2018, potentially could not be "an efficient use of anyone's kind of resources." Defendant's counsel, however, never indicated at the February 13, 2018 oral argument that IAP should seek bid and proposal costs for its protest in Case No. 17-1959C, IAP's first protest of the Army Corps' initial evaluation of IAP's initial proposal. Defendant's counsel also did not indicate at the February 13, 2018 oral argument that IAP, necessarily, could recover bid and proposal costs in Case No. 18-179C after IAP willingly accepted another chance to compete for BOA Order # 2 and fully participated in the Army Corps' evaluation of its revised proposal for BOA Order # 2, as IAP did following the court's February 15, 2018 ruling in Case No. 18-179C. Defendant's counsel argued at the February 13, 2018 oral argument that IAP could potentially be afforded either "injunctive relief," in the form of a competition for a portion of BOA Order # 2 or bid and proposal costs in Case No. 18-179C. In addition, at the February 13, 2018 oral argument, upon consideration of defendant's counsel recommendation that bid and proposal costs were the preferred remedy in Case No. 18-179C in light of the projected March 19, 2018 demobilization date, IAP's counsel insisted that IAP preferred a chance to continue to participate in the process to potentially receive an award pursuant to BOA Order # 2 instead of seeking bid and proposal costs at that time. IAP's counsel stated that,

> [g]iven everything that we've seen, you know, IAP wants to be on the ground. IAP from the beginning, from back in December, when we tried to have these negotiations, January, throughout, all they wanted to do was get boots on the ground and be able to assist in this restoration project.

IAP's counsel also requested from the court at the February 13, 2018 oral argument that, in the event that the court found in favor of IAP in Case No. 18-179C, the court should order "immediate discussions" with the agency regarding IAP's revised proposal for BOA Order # 2. In addition, IAP's counsel noted at the February 13, 2018 oral argument that despite the projected March 19, 2018 demobilization date for government contractors to leave Puerto Rico, IAP believed that "[g]iven the amount of work that we could do immediately with -- or within one week, I think that there is still a fair amount of time" for IAP to meaningfully perform under BOA Order # 2, assuming IAP was awarded a contract under BOA Order # 2. Given IAP's decision not to request bid and proposal costs prior to voluntarily dismissing Case Nos. 17-1959C and 18-179C on March 19, 2018, defendant's counsel comment that bid and proposal costs were a potential remedy in Case No. 18-179C at the February 13, 2018 oral argument does not assist IAP's position that the court should re-open the judgments in Case Nos. 17-1959C

and 18-179C in order to award IAP bid and proposal costs for these two protests pursuant to RCFC 60(b)(5).

Similar to its argument in its RCFC 59(e) motion in Case No. 18-400C, IAP also argues that it is entitled to relief in Case Nos. 17-1959C and 18-179C pursuant to RCFC 60(b)(5) because the Army Corps' corrective action provided only partial relief by setting aside only $250.0 million and "proved illusory," because Fluor continued to perform under BOA Order # 2, so the amount of available work dwindled over time. As discussed above, IAP's regrets about the outcome of the Army Corps' corrective action and making only $250.0 million potentially available for an award to IAP does not support its request for relief from the judgments in Case Nos. 17-1959C and 18-179C. As noted above, IAP first became aware of defendant's decision to take corrective action at the January 8, 2018 bid protest hearing in Case No. 17-1959C, IAP's protest of the agency's evaluation of its initial proposal for BOA Order # 2, and Case No. 18-4C, IAP's protest of the modification to BOA Order # 1. At the January 8, 2018 hearing, defendant's counsel indicated to the court that defendant was planning on taking corrective action in Case No. 17-1959C to re-evaluate IAP's initial proposal for BOA Order # 2 and to hold discussions with IAP for a potential award under BOA Order # 2. As defendant's counsel explained at the January 8, 2018 hearing, if IAP submitted a "successful proposal," after renewed discussions, then IAP would be given an award under BOA Order # 2. IAP's counsel stated at the January 8, 2018 hearing that although "[t]here's a little bit of the devil on the details," defendant's corrective action "does sit with me." IAP also was aware at the January 11, 2018 oral argument in Case No. 17-1959C, discussing IAP's protest of the agency's initial evaluation of its losing proposal for BOA Order # 2, of the agency's decision to allow Fluor to continue to perform on BOA Order # 2 while IAP competed for a potential award of $250.0 million. Rather than challenge the terms of defendant's corrective action, IAP's counsel stated at the January 11, 2018 oral argument that "[w]e absolutely agree and appreciate what they [the agency] have put forth so far."

In addition, when defendant's counsel discussed the government's updates to the proposed corrective action in Case No. 17-1959C with the court at the January 11, 2018 oral argument, defendant's counsel noted that IAP's counsel is on "board with" the updates, to which IAP's counsel did not disagree. Additionally, IAP willingly participated in defendant's corrective action, by entering into discussions with the agency and by submitting revised proposals for a portion of BOA Order # 2. IAP's arguments that defendant's corrective action was "illusory" and provided only partial relief, as discussed above, are untimely as IAP subsequently was allowed to submit revised proposals for a portion of BOA Order # 2 to the Army Corps. Moreover, protestor's arguments regarding the alleged inequity of the government's corrective action by IAP are not persuasive, as the court found that the agency's evaluation of IAP's final, revised proposal was not unreasonable, and IAP did not object to the corrective action at the time it was developed and executed. Because IAP has failed to demonstrate that applying the judgments in Case No. 17-1959C and Case No. 18-179C is "no longer equitable" pursuant to RCFC 60(b)(5), IAP's RCFC 60(b)(5) motions for relief from the judgments in Case Nos. 17-1959C and 18-179C are denied.

In the alternative, IAP has moved for relief from the judgments entered in Case Nos. 17-1959C and 18-179C pursuant to RCFC 60(b)(6) and seeks an award of bid and proposal costs. IAP argues that it is entitled to relief pursuant to RCFC 60(b)(6) in Case Nos. 17-1959C and 18-179C because it is "not at fault" for failing to protest the government's "less-than-complete corrective action." In particular, IAP notes that the "situation" in Puerto Rico, i.e., the "hundreds of thousands of people in Puerto Rico" that had been "without power for months," created "extraordinary reasons for IAP not to seek" an injunction following the government's corrective action. IAP argues that it agreed to the corrective action referenced above because it "allowed work to move forward on the island despite the Corps' flawed procurements" and IAP "should not be punished for cooperating with the interests of the government, the Court, and the people of Puerto Rico."

"Under RCFC 60(b)(6), a court may vacate a party from a final judgment whenever appropriate to accomplish justice." AmBase Corp. v. United States, 112 Fed. Cl. 179, 183 (2013). "Relief from a final judgment pursuant to RCFC 60(b)(6) requires a showing of exceptional or extraordinary circumstances." Greenbrier v. United States, 75 Fed. Cl. 637, 641 (2007) (citing Ackermann v. United States, 340 U.S. 193, 199 (1950); and Louisville Bedding Co. v. Pillowtex Corp., 455 F.3d 1377, 1380 (Fed. Cir. 2006)), aff'd, 260 F. App'x 314 (Fed. Cir. 2008); see also Progressive Indus., Inc. v. United States, 888 F.3d at 1255 (affirming the United States Court of Federal Claims denial of party's Rule 60(b) motion and noting that "Rule 60(b)(6) should be applied only in 'extraordinary circumstances'" (quoting Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 (1988)); Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc., 714 F.3d at 1295 (noting that Rule 60(b)(6) "has long been limited to 'extraordinary circumstances'" (quoting Ackermann v. United States, 340 U.S. at 199); Fiskars, Inc. v. Hunt Mfg. Co., 279 F.3d at 1382 ("Rule 60(b)(6) is available only in extraordinary circumstances and only when the basis for relief does not fall within any of the other subsections of Rule 60(b)."). Furthermore, the "extraordinary circumstances" necessary to justify relief under Rule 60(b)(6) suggest "that the party is faultless in the delay." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. at 392; see also Progressive Indus., Inc. v. United States, 131 Fed. Cl. at 70 ("'Such extraordinary circumstances exist if a person can demonstrate that he was not at fault for his predicament.'" (quoting Mendez v. United States, 600 F. App'x 731, 733 (Fed. Cir.), cert. denied, 136 S. Ct. 62 (2015))); Infiniti Info. Sols., LLC v. United States, 94 Fed. Cl. 740, 750 (2010). As a Judge of this court explained, within the context of a RCFC 60(b)(6) motion, "[e]xamples of extraordinary circumstances include: (1) the conduct of proceedings without the knowledge of the losing party; (2) unusual combinations of health and financial difficulties; or (3) gross negligence or severe misconduct by counsel." Cyios Corp. v. United States, 124 Fed. Cl. at 113 (citing Infiniti Info. Sols., LLC v. United States, 93 Fed. Cl. 699, 705 n.11 (2010)). A "court's legal error, however, will not suffice to show 'extraordinary circumstances.'" Cyios Corp. v. United States, 124 Fed. Cl. at 113-14 (citing Brown v. United States, 80 F. App'x 676, 678 (Fed. Cir. 2003)).

IAP's argument that but for the grave situation in Puerto Rico, IAP would have sought an injunction following the government's corrective action in Case No. 17-1959C

does not change what occurred. The court first notes that IAP did in fact seek a temporary restraining order and preliminary injunction in its initial filing in Case No. 17-1959C, which the court declined to award at the time. Moreover, assuming that IAP would have sought an injunction following the government's corrective taken in Case No. 17-1959C, there was no guarantee that IAP would have received an injunction due to what IAP described as the government's allegedly "less-than-complete" corrective action in that case, nor did IAP specify in its RCFC 60(b)(6) motion or reply brief which type of injunction it would have sought. The ultimate decision on whether to enter a temporary restraining order or to enter a preliminary injunction lies with the court and requires a showing by the moving party of "(1) likelihood of success on the merits, (2) irreparable harm absent immediate relief, (3) the balance of interest weighing in favor of relief, and (4) that the injunction serves the public interest." Silfab Solar, Inc. v. United States, 892 F.3d 1340, 1345 (Fed. Cir. 2018); see also Munilla Constr. Mgmt., LLC v. United States, 130 Fed. Cl. 131, 135 (2016) ("The standards for determining whether to grant a temporary restraining order are the same as those that apply to a motion for a preliminary injunction. They require the moving party to demonstrate that: (1) it is likely to succeed on the merits; (2) it will be irreparably harmed without injunctive relief; (3) the balance of hardships tips in its favor and (4) the public interest favors the grant of injunctive relief." (citing Am. Signature, Inc. v. United States, 598 F.3d 816, 823 (Fed Cir. 2010)). Similarly, the decision to enter a permanent injunction lies with the court and requires the court to consider whether "(1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." Centech Grp., Inc. v. United States, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citing PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004)). Further, even if IAP would have been successful in bringing a protest of the government's, allegedly, incomplete corrective action in Case No. 17-1959C, resulting in a temporary restraining order or a preliminary or permanent injunction of the corrective action, there is no guarantee that IAP would have eventually won the award for the portion of BOA Order # 2, the relief that IAP ultimately sought in all of its related protests regarding BOA Order # 2, i.e., Case Nos. 17-1959C, 18-179C and 18-400C. Following a temporary restraining order or an injunction by this court, IAP still would have had to resubmit its proposal for BOA Order # 2 for evaluation by the agency.

While the court recognizes that the situation in Puerto Rico was devasting following the aftermath of Hurricane Maria, and IAP's concern for the people of Puerto Rico was genuine, the devastation in Puerto Rico following Hurricane Maria did not prevent IAP from fully litigating its position in Case Nos. 17-1959C and 18-179C. Throughout the entire life of Case Nos. 17-1959C and 18-179C, regardless of the situation on the ground in Puerto Rico, IAP retained the option to pursue a protest of the government's corrective action in Case No. 17-1959C or to request bid and proposal costs for Case Nos. 17-1959C and 18-179C before voluntarily dismissing both protests on March 19, 2018. IAP's decision not to seek a temporary restraining order or an injunction following the government's corrective action in Case No. 17-1959C was its decision and facilitated for IAP an opportunity to continue to compete for a portion of the contract funds available under BOA Order # 2. The fragile situation in Puerto Rico at the time of the procurements

is not the type of "extraordinary" circumstance which justifies the re-opening of the judgments in Case Nos. 17-1959C and 18-179C, pursuant to RCFC 60(b)(6), to allow for an award of bid and proposal costs at this time. In addition, there is no evidence in the record before the court of any facts which could be considered "extraordinary circumstances" justifying relief from the judgments in Case Nos. 17-1959C and 18-179C. Because IAP has failed to present any "extraordinary circumstances" justifying relief from the judgments in Case Nos. 17-1959C and 18-179C, IAP's request for relief pursuant to RCFC 60(b)(6) fails.

## CONCLUSION

In sum, although the court is sympathetic to IAP's plight regarding its choices, IAP has not demonstrated that the court committed a clear error of law that resulted in manifest injustice when it entered judgment in Case No. 18-400C without an award of bid and proposal costs pursuant to RCFC 59(e). The court also finds that IAP has not demonstrated the kind of inequity regarding the judgments in Case Nos. 17-1959C and 18-179C required to reopen the judgments pursuant to RCFC 60(b)(5), nor has IAP sufficiently demonstrated extraordinary circumstances justifying relief from these judgments pursuant to RCFC 60(b)(6). Throughout the history of IAP's four protests in this court, Case Nos. 17-1959C, 18-4C, 18-179C, and 18-400C, IAP maintained for itself an opportunity to compete for a possible award of a portion of the contract work to rebuild the electrical system in Puerto Rico, although IAP was unsuccessful in the competition at the end of the day after the Army Corps' evaluation of IAP's final revision of its proposal, which the court found was neither an arbitrary nor capricious evaluation. For these reasons, the court **DENIES** IAP's RCFC 59(e) motion in Case No. 18-400C and IAP's RCFC 60(b)(5) and 60(b)(6) motions in Case Nos. 17-1959C and 18-179C.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**